60 F.3d 835
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Lee SCRIVNER, Defendant-Appellant.
 No. 94-30265.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1995.
Decided July 6, 1995.
 
 Before: BROWNING, REAVLEY,* and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Richard Scrivner appeals his conviction as a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g), and for unlawful possession of an unregistered silencer, in violation of 26 U.S.C. Sec. 5861(d). We affirm.
 
 BACKGROUND
 
 3
 On May 6, 1993, a search warrant was executed at Scrivner's residence. In the course of the search, a briefcase was found which contained a fully automatic machine gun and a silencer. Scrivner had been previously convicted of forgery, burglary and the sale of cocaine. He lived at his house with his wife, but at the time of the search Scrivner was in jail.
 
 
 4
 On August 11, 1993, a grand jury returned a two count indictment charging a violation of 18 U.S.C. Secs. 922(g) and 924 for being a convicted felon in knowing possession of a firearm which had previously travelled in interstate commerce and a violation of 26 U.S.C. Secs. 5861(d) and 5871 for possessing a firearm, a silencer, which had not been registered as required by law. Scrivner was in a state detention center at the time due to a state parole violation. A detainer was issued to the state facility. On January 13, 1994, Scrivner was arraigned and a not guilty plea was entered. Trial commenced on May 17, 1994. Scrivner was convicted and sentenced to 94 months in prison and 3 years supervised release.
 
 
 5
 Scrivner appeals his conviction contending first that the time period between indictment and trial in his case violated the Speedy Trial Act and that he did not receive proper notice of the indictment under the Speedy Trial Act. He contends that the district court erred in refusing to strike the testimony of Michelle Scrivner because the Government failed to produce a transcript of her recorded conversation with a police officer in violation of the Jencks Act. Scrivner also contends that there was insufficient evidence to support the conviction and that the court applied the wrong intent requirement in its jury instruction. In addition, Scrivner contends that the submission of his sworn statement claiming ownership of the gun in question, which had previously been submitted in a civil forfeiture action, violated his Fifth Amendment privilege against self incrimination. Finally, he contends that the court erred in admitting Valerie Schwartz's testimony that she had previously seen a gun in Scrivner's home because it was evidence of a prior bad act.
 
 DISCUSSION
 A. Speedy Trial Act Claims
 
 6
 On August 10, 1993 a federal grand jury indicted Scrivner. The Government filed a detainer with the state detention center where Scrivner was in custody. The Government did not request a transfer to federal custody until January 6, 1994, one week before Scrivner's arraignment on January 13, 1994. Scrivner contends that he was not arraigned in a timely manner. Scrivner points to Federal Rule of Criminal Procedure 9(c)(1) which provides that an officer executing an arrest warrant "shall bring the arrested person without unnecessary delay before the nearest federal magistrate...." This rule applies to persons arrested pursuant to an arrest warrant. Scrivner admits that he had not been arrested. A detainer had been lodged, but a detainer is not the equivalent to an arrest. See United States v. Shahryar, 719 F.2d 1522, 1525 (11th Cir.1983) (holding that "the starting date for purposes of the Act is the date that the defendant is delivered into federal custody.... Common sense, as well as deeply rooted concepts of federalism dictate that the Speedy Act rules relate only to federal and not state custody."); United States v. Hausman, 894 F.2d 686, 688-89 (5th Cir.), cert. denied, 498 U.S. 830 (1990); United States v. Copley, 774 F.2d 728, 730 (6th Cir.1985), cert. denied, 475 U.S. 1049 (1986).
 
 
 7
 Scrivner claims that the Speedy Trial Act was violated because of the delay between his indictment and arraignment. He contends that this delay caused his trial to be delayed, and therefore, the delay violated the Speedy Trial Act. As the district court stated, 18 U.S.C. 3161(c) provides that a defendant must be brought to trial within 70 days from the filing of the indictment or the first appearance before the magistrate judge, whichever is later. Scrivner was given a trial date within seventy days of his first appearance--at his arraignment. The trial was subsequently delayed. He does not contend that this delay was improper, but instead argues that the delay between indictment and trial was improper. Since the date of his arraignment was the determinative date, the time passage between indictment and trial is not relevant under section 3161(c).[1]
 
 
 8
 Scrivner states that "[t]he prosecution cannot indict, fail to arrest and therefore abate defendant's right to prompt arraignment and speedy trial." He cites no authority for this proposition and does not demonstrate how the prosecution has failed to follow the procedures outlined in the Speedy Trial Act or the Federal Rules of Criminal Procedure.
 
 
 9
 Scrivner also claims that the notice requirement of the Speedy Trial Act was violated because he was not given proper notice of the detainer filed by the United States Marshall at the County Detention Center. 18 U.S.C. Sec. 3161(j) provides for the notice procedure to be followed when issuing a detainer against a person serving a term of imprisonment. This procedure requires that the prisoner be notified of the detainer and of his right to demand trial. If the prisoner demands a trial, the custodian must make the request known to the Government and the Government must seek custody for trial. The detainer sent to Scrivner's detention center stated that the notice requirements of the Speedy Trial Act did not apply, presumably because Scrivner was not serving a term of imprisonment but rather was in custody pursuant to a parole violation. Scrivner admits that he was not serving a term of imprisonment when the detainer was issued. Indeed, he is careful to point out that his information sheet incorrectly stated that he was in custody on another conviction, when it should have stated that he was in custody awaiting trial on other charges.
 
 
 10
 Scrivner claims in his brief that he did not receive notice of the detainer. The detainer itself instructed the detention center officials to give a copy of the detainer to Scrivner. It is not clear whether this was done. In any case, the correspondence between the Government and Scrivner's attorney regarding a possible plea bargain indicates that pre-indictment Scrivner was well aware of the impending charges, and post-indictment Scrivner was well aware of the actual charges. In addition, Scrivner has shown no prejudice arising from a lack of notice. He was aware of the charges brought against him and represented by counsel, and therefore, could have demanded a trial. He obviously did not do so because he was attempting to negotiate a plea bargain.
 
 B. Tape Recording of Conversation
 
 11
 The prosecution called Michelle Scrivner, the defendant's sister-in-law, to testify at trial. Michelle had given a statement to Detective Don Forman, an officer of the Regional Organized Crime Network (ROCN), over the telephone. The conversation was recorded. Forman handwrote a summary of the conversation and signed it. At trial, the defense requested a copy of the transcript of the recording of the conversation and defense counsel requested that the testimony be struck if the transcript was not produced.[2] Once the objection was raised, there was a great deal of confusion over the conversation between Michelle and Forman because Forman's handwritten summary had the wrong date on it, making it seem as if there may have been two conversations at issue. Once it was ascertained that there was only one conversation and Forman's report summarized that one conversation, the district court stated that it was satisfied that "the only statements that were taken have been provided."
 
 
 12
 It is undisputed that the defense received a copy of Forman's report. Scrivner claims that a Jencks Act violation has occurred because the transcript of the phone conversation should also have been given to them.
 
 The Jencks Act provides that:
 
 13
 [a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.
 
 
 14
 18 U.S.C. Sec. 3500(b). Recorded interviews with potential witnesses are Jencks Act statements. United States v. Well, 572 F.2d 1383, 1384 (9th Cir.1978).
 
 
 15
 "A conviction will be affirmed if the 'Jencks error is more than likely harmless.' " United States v. Brumel-Alvarez, 991 F.2d 1452, 1457 (9th Cir.1992). Michelle Scrivner essentially testified to the fact that she had been to Richard Scrivner's home at 7001 S.E. 71st Street, which is where the gun was found. Michelle identified Richard in a photograph of the house on 71st Street. She also stated that she had not seen any of the furniture in the house on 71st Street at Richard Scrivner's previous residence. This statement was relevant primarily in the forfeiture action because it implies that the furniture was bought with money from Scrivner's illegal activities. All of this information was revealed in the summary of the phone conversation written by Officer Forman. The important aspect of Michelle's testimony in this case was her statement that Scrivner did reside at the house on 71st Street. Her knowledge with respect to this was indicated in Forman's report.
 
 
 16
 The fact that the Government turned over Forman's report significantly reduced the chance of harmful error. Perhaps there was information revealed during the taped conversation, however, which may have been helpful to the defense and was not revealed in Forman's notes. Since we do not have the tape or a transcript of it, we cannot assess whether the report fully incorporated the entire conversation, so as to make the error harmless. See United States v. Carrasco, 537 F.2d 372, 377 (9th Cir.1976); Ogden v. United States, 303 F.2d 724, 738 (9th Cir.1962). The failure to turn over the tape or a transcript of it was nevertheless harmless because "defendant's guilt was established beyond a reasonable doubt by competent testimony other than" Michelle Scrivner's testimony. Carrasco, 537 F.2d at 377.
 
 C. Sufficiency of the Evidence
 
 17
 In United States v. Reese, this court reversed a conviction for the illegal possession of a firearm under 18 U.S.C. 1202(a)(1).[3] 775 F.2d 1066, 1073 (9th Cir.1985). In that case, the only evidence supporting the conclusion that the defendant was in possession of the firearm was the fact that it was found in the defendant's residence, which he shared with others. Scrivner cites this case for support of his contention that his conviction must be reversed because the only evidence supporting it is the fact that the gun was found in his house, which he shared with others.
 
 
 18
 The Government did, however, introduce evidence of actual possession. The Government offered Scrivner's sworn affidavit from a collateral civil forfeiture proceeding wherein he claimed a possessory interest in items seized from his residence including the gun and silencer. He claimed "possessory and/or legal interest" in "those items enumerated in property/evidence number 464011-464019." Receipt number 464017 was the receipt for the machine gun and silencer. Scrivner's affidavit shows actual, and not constructive possession. In addition, the statements made by Scrivner to Officer Forman indicating that he had knowledge of the machine gun is evidence of possession. Forman stated that when questioned regarding the gun, Scrivner said, "Do you want to know where the gun came from?" and "I don't know if it's been fired."
 
 
 19
 D. Scienter Rule of Staples v. United States
 
 
 20
 The Supreme Court has recently held that under 26 U.S.C. Sec. 5845 the Government must prove that a defendant knew that the gun he or she possesses is the type prohibited under that statute. Staples v. United States, 114 S.Ct. 1793, 1804 (1994). The Court rejected the district court's instruction which stated that the defendant must only be shown to know that "he [was] dealing with a dangerous device of a type as would alert one to the likelihood of regulation." Id. at 1796.
 
 
 21
 Scrivner contends that under Staples his conviction should be reversed because the government did not prove that he knew what type of gun he possessed. Scrivner points out that in Staples, as in his case, the defendant possessed a semiautomatic weapon that had been modified to fire fully automatically. Staples claimed that he did not know that the weapon had been modified to become a machine gun. Scrivner also claims that he did not know that the weapon in question was a machine gun. In Scrivner's case, the court instructed the jury that it must find that Scrivner knew his weapon was a firearm, as that term is commonly used, but it did not have to find that the firearm was a machine gun.
 
 
 22
 Staples dealt with the application of 26 U.S.C. Sec. 5861(d), while this case deals with the application of 18 U.S.C. Sec. 922(g). Section 922(g) prohibits certain persons from possessing "any" firearm,[4] while section 5861 prohibits any person from owning a firearm which is not properly registered.[5] In Staples, the Court held that since some firearms do not need to be registered, the Government must show that the defendant knew that his gun was the type that had to be registered. Under section 922, as defined by section 921 of Title 18, the definition of firearm is broader than as defined in 26 U.S.C. Sec. 5845 for purposes of section 5861.[6] Specifically, section 921 includes "any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. Sec. 921(3)(A). Section 5861 lists specific types of guns which fall within the definition of firearm. Under section 5845 the fact that the gun was fully automatic was relevant, while in this case, the gun was illegally possessed not because of the type of gun it was, but because Scrivner was a convicted felon possessing any gun. Therefore, Staples is not determinative in this case and the jury instruction was proper.
 
 E. Use of Scrivner's Affidavit
 
 23
 Scrivner signed an affidavit submitted in a state civil forfeiture proceeding claiming ownership to property taken from his home. The affidavit referred to property enumerated in certain property/evidence receipts. The gun and silencer which are the subject of the criminal conviction in this case were listed on one of those receipts. Scrivner contends that the Government's use of his affidavit in the criminal case violated his right to be free from self-incrimination under the Fifth Amendment. He maintains that he was "compelled" to submit the affidavit in the civil proceeding or forfeit his property.[7]
 
 
 24
 The Supreme Court has stated that " 'the Government may not use evidence against a defendant in a criminal case which has been coerced from him under penalty of either giving the evidence or suffering forfeiture of his property.' " United States v. Kordel, 90 S.Ct. 763, 770 (1970). The Court held in that case, however, that in a forfeiture proceeding a defendant has the option of invoking his Fifth Amendment privilege in that proceeding, and "[h]is failure at any time to assert the constitutional privilege leaves him in no position to complain ... that he was compelled to give testimony against himself." Id. at 768; see also London v. Patterson, 463 F.2d 95, 98 (9th Cir.1972) (citing Kordel and suggesting that a defendant can seek a protective order postponing civil discovery until termination of the criminal action), cert. denied, 93 S.Ct. 1531 (1973).
 
 
 25
 In Kordel, a corporation and two of its officers were charged with violations of the Federal Food, Drug and Cosmetic Act. The Government instituted a civil action to seize two of the company's products. With pending criminal charges against them, the officers responded to interrogatories requested in the forfeiture action. The Government used their responses in the criminal prosecution. They were convicted and appealed claiming that their Fifth Amendment privilege had been violated. The Court disagreed because "[w]ithout question [the defendant] could have invoked his Fifth Amendment privilege against compulsory self-incrimination." 90 S.Ct. at 767. The defendant was not barred from doing so because the case was "civil rather than criminal in character." Id. Scrivner could have invoked his Fifth Amendment privilege with respect to the gun and silencer in the civil proceeding.
 
 
 26
 F. Schwartz's Testimony as Evidence of a Prior Bad Act
 
 
 27
 Valerie Schwartz testified that Scrivner had a gun in his home in August of 1992, eight months before the gun was found in Scrivner's house. At trial, she identified a drawing of the gun (a drawing she had made earlier for Officer Forman) and described its size. Her picture apparently looked similar to the gun found in Scrivner's home. Scrivner lived at a different residence at that time, so she did not testify that she saw the gun at the home where the gun at issue in this case was found. She also testified that Scrivner was not in the room when she saw the gun.
 
 
 28
 Scrivner contends that Schwartz's testimony constituted evidence of a prior bad act and, as such, the prosecution was obligated to give pretrial notice of its intent to introduce this evidence. Scrivner also contends that the evidence was inadmissible because prior bad acts can not be introduced unless the evidence is sufficient to support a finding that the defendant committed the other act. United States v. Bibo-Rodriquez, 922 F.2d 1398, 1400 (9th Cir.), cert. denied, 111 S.Ct. 2861 (1991). As the Government indicated in its closing argument, Schwartz's testimony was not necessarily evidence of a prior bad act, but rather evidence of the act for which Scrivner was being prosecuted. In other words, the testimony supported a conclusion that Scrivner owned the gun at that time and his ownership was a single continuous act.
 
 
 29
 Scrivner also contends that the testimony was inadmissible because it was irrelevant. He cites McKinney v. Rees, 993 F.2d 1378 (9th Cir.1993), to support this contention. In that case, evidence that the defendant owned knives was found to be irrelevant to the issue of whether the defendant killed his wife, who was killed by a knife. In Rees the crime was murder and not the possession of knives. Since in this case the issue is possession of a gun, evidence demonstrating earlier possession of the same or even a similar gun is certainly relevant.
 
 
 30
 Finally, Scrivner did not object to the admission of this evidence at trial. Therefore, even if its admission is error, we must review it under the plain error standard. United States v. Rivera, 43 F.2d 1291, 1295 (9th Cir.1995). The admission of Schwartz's testimony did not result in a "miscarriage of justice" and it did not affect the "integrity of the judicial process," and therefore, no plain error occurred. United States v. Ponce, 51 F.3d 820, 830 (9th Cir.1995).
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Scrivner discusses 18 U.S.C. 3161(h)(3)(B) and the fact that the seventy day indictment to trial period was not suspended under this provision because he was available for trial while in state custody. The prosecution does not rely on this provision, however, in contending that it did not violate the Speedy Trial Act's indictment to trial period deadline. Therefore, reference to this provision is irrelevant
 
 
 [2]
 The defense became aware of the existence of the tape during discovery in a related civil forfeiture case. It is unclear whether the defense had access to the tape itself
 
 
 [3]
 Scrivner is charged under the successor statute to section 1202, 18 U.S.C. Sec. 922(g)
 
 
 [4]
 Section 922(g) prohibits certain people, in this case one "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year," from "shipp[ing] or transport[ing] in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."
 
 
 [5]
 26 U.S.C. Sec. 5861(d) provides that it is illegal to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Section 5845 of Title 26 defines the term firearm as used in section 5861, specifying the types of guns which are prohibited
 
 
 [6]
 This distinction is diluted by the fact that in this case the indictment charged Scrivner with illegal possession of a firearm under 18 U.S.C. Sec. 922, but referenced 26 U.S.C. Sec. 5845(b) in defining firearm. Title 18 has a similar, but distinct, definition of firearm. Scrivner was convicted, however, under section 922 and not section 5848
 
 
 [7]
 Scrivner also argues that the affidavit was improperly admitted because it was used to confuse the jury and because its use violated 26 U.S.C. Sec. 5848. Neither argument has merit. 26 U.S.C. Sec. 5848 prohibits the use of any "application, registration, or records required to be submitted or retained ... in order to comply with any provision of this chapter. " The affidavit in question in this case is not required by Chapter 58 of Title 26