UNITED STATES *v.* KORDEL ET AL.

No. 87.   Argued November 20, 1969—Decided February 24, 1970

1

*Lawrence G. Wallace* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Beatrice Rosenberg,* and *Roger A. Pauley.*

*Solomon H. Friend* argued the cause for respondents. With him on the brief was *Sheldon S. Lustigman.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The respondents are the president and vice president, respectively, of Detroit Vital Foods, Inc. They were convicted in the United States District Court for the Eastern District of Michigan, along with the corporation, for violations of the Federal Food, Drug, and Cosmetic Act.[1] The Court of Appeals for the Sixth Circuit reversed the respondents' convictions on the ground that the Government's use of interrogatories to obtain evi-

---

[1] 52 Stat. 1040, 21 U. S. C. § 301 *et seq.*

dence from the respondents in a nearly contemporaneous civil condemnation proceeding operated to violate their Fifth Amendment privilege against compulsory self-incrimination.[2] We granted certiorari to consider the questions raised by the Government's invocation of simultaneous civil and criminal proceedings in the enforcement of federal law.[3]

In March 1960 the Division of Regulatory Management of the Food and Drug Administration (hereafter FDA) instructed the agency's Detroit office to investigate the respondents' possible violations of the Food, Drug, and Cosmetic Act. Within a month the Detroit office recommended to the Division a civil seizure of two of the respondents' products, "Korleen" and "Frutex"; within another month the Division similarly recommended seizure to the FDA's General Counsel. On June 6, 1960, the General Counsel requested the United States Attorney for the Eastern District of Michigan to commence an *in rem* action against these products of the corporation, and the United States Attorney filed a libel three days later. The corporation, appearing as the claimant, answered the libel on September 12, 1960. An FDA official in the Division of Regulatory Management then prepared extensive interrogatories to be served on the corporation in this civil action. The United States Attorney filed the agency's interrogatories on January 6, 1961, pursuant to Rule 33 of the Federal Rules of Civil Procedure.[4]

---

[2] *United States* v. *Detroit Vital Foods, Inc.,* 407 F. 2d 570. The Court of Appeals initially reversed the judgments of conviction of all three defendants, but on the Government's petition for rehearing it affirmed with respect to the corporation.

[3] 395 U. S. 932.

[4] Rule 33 provides in pertinent part: "Any party may serve upon any adverse party written interrogatories to be answered by the

After the Division official had drafted the interrogatories, he recommended that pursuant to § 305 of the Food, Drug, and Cosmetic Act the FDA serve upon the corporation and the respondents a notice that the agency contemplated a criminal proceeding against them with respect to the transactions that were the subject of the civil action.[5] On January 9, 1961, three days after the filing of the interrogatories in the civil action, the Detroit office received an instruction from the Division to serve the statutory notice. The Detroit office complied 10 days later, and on March 8, 1961, the agency held a hearing on the notice.

On April 10, the corporation, having received the FDA's interrogatories but not yet having answered them, moved to stay further proceedings in the civil action or, in the alternative, to extend the time to answer the interrogatories until after disposition of the criminal proceeding signaled by the § 305 notice. The motion was accompanied by the affidavit of counsel. The moving papers urged the District Court to act under Rule 33 "in the interest of substantial justice" and as a "balancing

party served or, if the party served is a public or private corporation or a partnership or association, by any officer or agent, who shall furnish such information as is available to the party."

[5] Section 305 of the Act, 21 U. S. C. § 335, provides:

"Before any violation of [the Act] . . . is reported by the Secretary [of the Department of Health, Education, and Welfare] to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding." Service of the statutory notice did not necessarily mean that a criminal prosecution would follow; the testimony before the District Court on the respondents' pretrial motion to suppress evidence indicated that fewer than 10% of the matters involving a § 305 notice reach the stage of either indictment or information.

of hardship and equities of the respective parties . . . ." Permitting the Government to obtain proof of violations of the Act by resort to civil discovery procedures, the movant urged, would be "improper" and would "work a grave injustice against the claimant"; it would also enable the Government to have pretrial discovery of the respondents' defenses to future criminal charges. Counsel expressly disavowed any "issue of a self-incrimination privilege in favor of the claimant corporation." And nowhere in the moving papers did counsel raise a claim of the Fifth Amendment privilege against compulsory self-incrimination with respect to the respondents.

On June 21, 1961, the District Court denied the motion upon finding that the corporation had failed to demonstrate that substantial prejudice and harm would result from being required to respond to the interrogatories. The court reasoned that the § 305 notice did not conclusively indicate the Government would institute a criminal proceeding, that six to 12 months could elapse from the service of the statutory notice to initiation of a criminal prosecution, and that the Government could obtain data for a prosecution from the testimony in the civil action or by subpoenaing the books and records of the corporation. Accordingly, the court concluded, the interests of justice did not require that the Government be denied the information it wanted simply because it had sought it by way of civil-discovery procedures. On September 5, 1961, in compliance with the court's directive, the corporation, through the respondent Feldten, answered the Government's interrogatories.

On July 28, 1961, five weeks after the District Court's order but more than a month before receipt of the answers to the interrogatories, the Director of the FDA's Detroit office recommended a criminal prosecution to the Division. The Division forwarded the recommendation

6

to the General Counsel on August 31, 1961, still prior to receipt of Feldten's answers. While the matter was pending in the General Counsel's office, the Division officer who had originally drafted the proposed interrogatories recommended that additional violations of the statute be alleged in the indictment. On June 13, 1962, the Department of Health, Education, and Welfare requested the Department of Justice to institute a criminal proceeding, and about two months after that the latter department instructed the United States Attorney in Detroit to seek an indictment. The civil case, still pending in the District Court, proceeded to settlement by way of a consent decree in November 1962, and eight months later the Government obtained the indictment underlying the present judgments of conviction.

I

At the outset, we assume that the information Feldten supplied the Government in his answers to the interrogatories, if not necessary to the proof of the Government's case in the criminal prosecution, as the Court of Appeals thought, at least provided evidence or leads useful to the Government.[6] However, the record amply supports the express finding of the District Judge who presided at the criminal trial, and who held an extensive evidentiary hearing on the respondents' pretrial motion to suppress evidence, that the Government did not act in bad faith in filing the interrogatories. Rather, the testimony before the trial court demonstrated that the Division of Regulatory Management regularly prepares such interrogatories upon the receipt of claimants' answers to civil libels, and files them in over three-fourths of such cases, to hasten their disposition by securing

[6] Compare 407 F. 2d, at 575, with *id.*, at 572.

admissions and laying the foundation for summary judgments.

The Court of Appeals thought the answers to the interrogatories were involuntarily given. The District Judge's order denying the corporation's motion to defer the answers to the interrogatories, reasoned the court, left the respondents with three choices: they could have refused to answer, thereby forfeiting the corporation's property that was the subject of the libel; they could have given false answers to the interrogatories, thereby subjecting themselves to the risk of a prosecution for perjury; or they could have done just what they did—disclose the requested information, thereby supplying the Government with evidence and leads helpful in securing their indictment and conviction.[7]

In this analysis we think the Court of Appeals erred. For Feldten need not have answered the interrogatories. Without question he could have invoked his Fifth Amendment privilege against compulsory self-incrimination.[8] Surely Feldten was not barred from asserting his privilege simply because the corporation had no privilege of its own,[9] or because the proceeding in

---

[7] *Id.,* at 573.

[8] *Wilson* v. *United States,* 221 U. S. 361, 377, 385; *Boyd* v. *United States,* 116 U. S. 616, 633–635; cf. *United States* v. *42 Jars . . . "Bee Royale Capsules,"* 162 F. Supp. 944, 946, aff'd, 264 F. 2d 666.

[9] *Curcio* v. *United States,* 354 U. S. 118, 124; *Wilson* v. *United States, supra,* at 385; *United States* v. *3963 Bottles . . . of . . . "Enerjol Double Strength,"* 265 F. 2d 332, 335–336, cert. denied, 360 U. S. 931; *United States* v. *30 Individually Cartoned Jars . . . "Ahead Hair Restorer . . . ,"* 43 F. R. D. 181, 187; cf. *Shapiro* v. *United States,* 335 U. S. 1, 27. That the corporation has no privilege is of course long established, and not disputed here. See *George Campbell Painting Corp.* v. *Reid,* 392 U. S. 286, 288–289; *Oklahoma Press Pub. Co.* v. *Walling,* 327 U. S. 186, 196, 208, 209–210; *United States* v. *Bausch & Lomb Optical Co.,* 321 U. S. 707, 726–727;

which the Government sought information was civil rather than criminal in character.[10]

To be sure, service of the interrogatories obliged the corporation to "appoint an agent who could, without fear of self-incrimination, furnish such requested information as was available to the corporation." [11]   The corporation could not satisfy its obligation under Rule 33 simply by pointing to an agent about to invoke his constitutional privilege.   "It would indeed be incongruous to permit a corporation to select an individual to verify the corporation's answers, who because *he* fears self-incrimination may thus secure for the corporation the benefits of a privilege it does not have." [12]   Such a result would effectively permit the corporation to assert on its own behalf the personal privilege of its individual agents.[13]

The respondents press upon us the situation where no one can answer the interrogatories addressed to the

*Essgee Co.* v. *United States,* 262 U. S. 151, 155–156; *Wheeler* v. *United States,* 226 U. S. 478, 489–490; *Baltimore & Ohio R. Co.* v. *ICC,* 221 U. S. 612, 622–623; *Hale* v. *Henkel,* 201 U. S. 43, 74–75; cf. *Curcio* v. *United States, supra; United States* v. *White,* 322 U. S. 694, 698, 705.

[10] *Gardner* v. *Broderick,* 392 U. S. 273, 276; *McCarthy* v. *Arndstein,* 266 U. S. 34, 40; *Counselman* v. *Hitchcock,* 142 U. S. 547, 562, 563–564; *Boyd* v. *United States, supra; United States* v. *Saline Bank,* 1 Pet. 100, 104; 8 J. Wigmore, Evidence § 2257, pp. 339–340 (McNaughton rev. 1961); C. McCormick, Evidence § 123, p. 259 (1954).

[11] *United States* v. *3963 Bottles . . . of . . . "Enerjol Double Strength," supra,* at 336; cf. *United States* v. *48 Jars . . . "Tranquilease,"* 23 F. R. D. 192, 195, 196; 2A W. Barron & A. Holtzoff, Federal Practice and Procedure § 651, p. 101 (Wright ed. 1961).

[12] *United States* v. *3963 Bottles . . . of . . . "Enerjol Double Strength," supra,* at 336.

[13] Cf. *George Campbell Painting Corp.* v. *Reid, supra,* at 289; *Hale* v. *Henkel, supra,* at 69–70.

corporation without subjecting himself to a "real and appreciable" risk of self-incrimination.[14]   For present purposes we may assume that in such a case the appropriate remedy would be a protective order under Rule 30 (b), postponing civil discovery until termination of the criminal action.[15]   But we need not decide this troublesome question.   For the record before us makes clear that even though the respondents had the burden of showing that the Government's interrogatories were improper,[16] they never even asserted, let alone demonstrated, that there was no authorized person who could answer the interrogatories without the possibility of compulsory self-incrimination.[17]   To the contrary, the record shows that nobody associated with the corporation asserted his privilege at all.   The respondents do not sug-

---

[14] Cf. *Minor* v. *United States,* 396 U. S. 87, 98; *Leary* v. *United States,* 395 U. S. 6, 16; *Marchetti* v. *United States,* 390 U. S. 39, 48; *Mason* v. *United States,* 244 U. S. 362, 365.

[15] See *Paul Harrigan & Sons* v. *Enterprise Animal Oil Co.,* 14 F. R. D. 333.

[16] *Lucy* v. *Sterling Drug, Inc.,* 240 F. Supp. 632, 634; *Glick* v. *McKesson & Robbins, Inc.,* 10 F. R. D. 477, 479, 480; *Bowles* v. *Safeway Stores, Inc.,* 4 F. R. D. 469, 470; *Blanc* v. *Smith,* 3 F. R. D. 182, 183. The respondents, urging that the Government had the burden of establishing the availability of an agent to answer for the corporation, rely upon the decision of the Court of Appeals for the District of Columbia Circuit in *Communist Party* v. *United States,* 118 U. S. App. D. C. 61, 331 F. 2d 807, cert. denied, 377 U. S. 968. But there the court departed from the customary allocation of the burden on the ground that the mere act of volunteering the information sought, or even of showing that an effort had been made to find someone who would answer, was itself potentially incriminatory. *Id.,* at 68–69, 331 F. 2d, at 814–815.

[17] See *United States* v. *American Radiator & Standard Sanitary Corp.,* 388 F. 2d 201, 204, cert. denied, 390 U. S. 922; *United States* v. *Simon,* 373 F. 2d 649, 653, cert. granted *sub nom. Simon* v. *Wharton,* 386 U. S. 1030, vacated as moot, 389 U. S. 425; but see *National Discount Corp.* v. *Holzbaugh,* 13 F. R. D. 236, 237.

gest that Feldten, who answered the interrogatories on behalf of the corporation, did so while unrepresented by counsel or without appreciation of the possible consequences. His failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself.[18]

Kordel's claim of compulsory self-incrimination is even more tenuous than Feldten's. Not only did Kordel never assert the privilege; he never even answered any interrogatories. The Court of Appeals nevertheless reversed his conviction because it thought it "clear from the record that Detroit Vital Foods, Inc., was merely the corporate device through which Kordel sold his products. The Government naturally wanted to cut through the facade and get to Kordel who was the president and dominant personality in the corporation."[19] We disagree. The Government brought its libel against the goods; the corporation, not Kordel, appeared as claimant. The Government subsequently prosecuted Kordel as an officer of the company. If anyone has sought to cut through the corporate facade so far as the Fifth Amendment privilege is concerned, it is Kordel: he has, in effect, attempted to fashion a self-incrimination claim by combining testimony that he never gave and an assertion of the privilege that he never made with another assertion of the privilege that his company never had.

The Court of Appeals thought that Kordel must go free in any event because the Government had used Feldten's admissions in proving its criminal case against both respondents, in violation of the rule in *Bruton* v.

---

[18] *Gardner* v. *Broderick*, 392 U. S. 273, 276; *Rogers* v. *United States*, 340 U. S. 367, 372–375; *United States* v. *Monia*, 317 U. S. 424, 427; *Vajtauer* v. *Commissioner of Immigration*, 273 U. S. 103, 113; *Brown* v. *Walker*, 161 U. S. 591, 597.

[19] 407 F. 2d, at 575.

*United States.*[20] This too was error. Feldten's admissions were never introduced in evidence at the trial, and thus Kordel cannot maintain that the reception in evidence of a codefendant's inculpatory statements violated his Sixth Amendment right to confrontation.[21]

## II

The respondents urge that even if the Government's conduct did not violate their Fifth Amendment privilege against compulsory self-incrimination, it nonetheless reflected such unfairness and want of consideration for justice as independently to require the reversal of their convictions. On the record before us, we cannot agree that the respondents have made out either a violation of due process or a departure from proper standards in the administration of justice requiring the exercise of our supervisory power. The public interest in protecting consumers throughout the Nation from misbranded drugs requires prompt action by the agency charged with responsibility for administration of the federal food and drug laws. But a rational decision whether to proceed criminally against those responsible for the misbranding may have to await consideration of a fuller record than that before the agency at the time of the civil seizure of the offending products. It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.[22]

We do not deal here with a case where the Government has brought a civil action solely to obtain evidence for

---

[20] 391 U. S. 123. See 407 F. 2d, at 575.

[21] See *Bruton* v. *United States, supra,* at 126.

[22] Cf. *Standard Sanitary Mfg. Co.* v. *United States,* 226 U. S. 20, 51–52 (Sherman Act).

its criminal prosecution [23] or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; [24] nor with a case where the defendant is without counsel [25] or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; [26] nor with any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution. [27]

Overturning these convictions would be tantamount to the adoption of a rule that the Government's use of interrogatories directed against a corporate defendant in the ordinary course of a civil proceeding would always

---

[23] Cf. *United States* v. *Procter & Gamble Co.*, 356 U. S. 677, 683–684; *United States* v. *Pennsalt Chemicals Corp.*, 260 F. Supp. 171; and see *United States* v. *Thayer*, 214 F. Supp. 929; *Beard* v. *New York Central R. Co.*, 20 F. R. D. 607.

[24] See *Smith* v. *Katzenbach*, 122 U. S. App. D. C. 113, 114–116, 351 F. 2d 810, 811–813; *United States* v. *Lipshitz*, 132 F. Supp. 519, 523; *United States* v. *Guerrina*, 112 F. Supp. 126, 128.

[25] Cf. *Nelson* v. *United States*, 93 U. S. App. D. C. 14, 19, 21, and n. 19, 208 F. 2d 505, 510, 512, and n. 19, cert. denied, 346 U. S. 827.

[26] Cf. *United States* v. *American Radiator & Standard Sanitary Corp.*, 388 F. 2d 201, 204–205, cert. denied, 390 U. S. 922.

[27] Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution, *Campbell* v. *Eastland*, 307 F. 2d 478, cert. denied, 371 U. S. 955; *United States* v. *Bridges*, 86 F. Supp. 931, 933; *United States* v. *30 Individually Cartoned Jars . . . "Ahead Hair Restorer . . . ,"* 43 F. R. D. 181, 187 n. 8; *United States* v. *One 1964 Cadillac Coupe DeVille*, 41 F. R. D. 352, 353–354; *United States* v. *$2,437 United States Currency*, 36 F. R. D. 257; *United States* v. *Steffes*, 35 F. R. D. 24; *United States* v. *Maine Lobstermen's Assn.*, 22 F. R. D. 199; *United States* v. *Cigarette Merchandisers Assn.*, 18 F. R. D. 497; *United States* v. *Linen Supply Institute*, 18 F. R. D. 452; sometimes at the request of the defense, *Kaeppler* v. *Jas. H. Matthews & Co.*, 200 F. Supp. 229; *Perry* v. *McGuire*, 36 F. R. D. 272; cf. *Nichols* v. *Philadelphia Tribune Co.*, 22 F. R. D. 89, 92.

immunize the corporation's officers from subsequent criminal prosecution. The Court of Appeals was correct in stating that "the Government may not use evidence against a defendant in a criminal case which has been coerced from him under penalty of either giving the evidence or suffering a forfeiture of his property." [28] But on this record there was no such violation of the Constitution, and no such departure from the proper administration of criminal justice.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK did not take part in the decision of this case.

---

[28] 407 F. 2d, at 575–576.