Timothy CAREY, Plaintiff,

v.

James William RUDSEAL, Marion
Franklin Shirley, Jr., and Randall
Wiley Smith, Defendants.

Civ. A. No. C 85–358 R.

United States District Court,
N.D. Georgia,
Rome Division.

Aug. 20, 1986.

Brian Spears, Kathleen L. Wilde, Atlanta, Ga., for plaintiff.

Sam G. Dickson, Decatur, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This civil rights case is before the Court on plaintiff's motion under Fed.R.Civ.P. 37(a)(2), to compel defendant Marion Franklin Shirley to respond to deposition questions and for costs and attorney's fees in bringing this motion under Fed.R.Civ.P. 37(a)(4). Also before the Court is plaintiff's motion to extend discovery. For the reasons set forth below, plaintiff's motions will be granted.

## BACKGROUND

Plaintiff Timothy Carey (Carey), who is black, filed this civil rights action in November, 1985. The facts, as alleged by the plaintiff, are as follows. On April 7, 1984, members of the Cedartown, Georgia Klavern of the Southern Knights of the Ku Klux Klan, met to pass out literature and solicit donations on Main Street in Cedartown. Defendant James William Rudseal (Rudseal) helped organize this event, and attended along with defendants Randall Wiley Smith (Smith) and Marion Franklin Shirley (Shirley). Plaintiff Carey was from Cedartown, and was present that day while on leave from service in the Navy.

Plaintiff alleges that while he was riding his bike past the gathering of Klansmen racial slurs were shouted at him without any provocation on his part. Further, that when he dismounted from his bicycle to shoo away a dog that had been following him, defendant Smith struck him repeatedly with a set of brass knuckles and sprayed mace into his face. Plaintiff alleges that defendants Rudseal and Shirley entered into a conspiracy to hide defendant Smith and prevent Carey from learning his identity. Defendant Smith pled guilty to the charge of battery against Carey in the Superior Court of Polk County, Georgia, and was deposed while serving time for that offense in the Polk County Jail. The motion to compel arises out of the efforts of Carey's attorney to depose Shirley.

Upon agreement between Carey's attorney, Brian Spears, and Shirley's attorney, Sam Dickson, the deposition of Shirley took place at Dickson's office in Decatur, Georgia. The date of the deposition was June 20, 1986. The deposition transcript shows that immediately after Shirley was sworn in as a witness and stated his name for the record, he invoked the Fifth Amendment privilege with respect to every question asked thereafter. On June 30, 1986, plaintiff filed the motion to compel, arguing that Shirley had refused willfully, and without justification, to answer any and all questions put to him during the deposition other than his name. The initial question before the Court is whether this invocation of the constitutional privilege against self-incrimination was validly raised by Shirley.

The Constitution's privilege against self-incrimination has ancient and venerable antecedents. It grew out of revulsion for the practices of the early ecclesiastical courts, such as the Star Chamber of England, whereby an individual could be brought before the court and made to answer broad questions regardless of the strength of the accusations against him. *See*, McCormick on Evidence 244 (1972). Required self-incrimination was a regular part of judicial proceedings in the seventeenth century. The *ex officio* oath required an answer to "things penal", and a failure to respond could result in torture or imprisonment. *Id.* at 246. But by 1700 this enforced self-incrimination began to wane, and in many instances was found improper.

In America, the privilege against self-incrimination was incorporated into the constitutions of several states before the ratification of the Constitution. It was made a part of the Bill of Rights "not only [as] an answer to numerous instances of colonial misrule but [as] a shield against the 'evils that lurk[ed] in the shadows of a new and untried sovereignty.' " *McCormick, supra,* at 248, *quoting,* Pittman, *The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America,* 21 Va.L.Rev. 763 (1935). Its purpose was stated eloquently by Justice Brennan:

> The ancient privilege of a witness against being compelled to incriminate himself is precious to free men as a shield against high-handed and arrogant inquisitorial practices. It has survived centuries of controversies, periodically kindled by popular impatience that its protection sometimes allows the guilty to escape punishment. But it has endured as a wise and necessary protection of the individual against arbitrary power, and the price of occasional failures of justice is paid in the larger interest of general personal security.

*United States v. Washington,* 431 U.S. 181, 193, 97 S.Ct. 1814, 1821, 52 L.Ed.2d 238 (1977) (Brennan, J., dissenting). *See also, United States v. Carlson,* 617 F.2d 518 (9th Cir.1980).

 The privilege not to incriminate oneself extends to all types of testimonial proceedings, whether criminal, civil, legislative, or administrative, *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977), including pretrial discovery in civil cases. *United States v. Kordel,* 397 U.S. 1, 7–8, 90 S.Ct. 763, 766–68, 25 L.Ed.2d 1 (1970). However, this protection is confined to instances "where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Nor is the witness excused from answering questions "merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the

hazard of incrimination. It is for the court to say whether his silence is justified." *Id.* In making that determination this Court is profoundly aware of the importance of the privilege, and the need for strong protection of its use. It is that very respect for the privilege that makes its use here indefensible.

 The incidents leading up to the deposition at issue, the questions asked, and the conduct of Shirley and his attorney at the deposition, leads the Court to conclude that the invocation of the privilege against self-incrimination here constituted a tactical maneuver, not a constitutional claim. When arrangements were made to take Shirley's deposition no notice was given to plaintiff's attorney that Shirley would refuse to answer any and all questions put to him. Plaintiff's counsel undertook the time and expense necessary to prepare for the deposition, and traveled to Dickson's office. Portions of the transcript of the deposition are illuminating.

Q: Please state your full name.

A: Marion Franklin Shirley, Junior.

Q: And, Mr. Shirley, do you ever have occasion to use any other name than that?

A: Should I answer that question?

MR. DICKSON: You indicated to me that you wanted to—

A: I refuse to answer that question, based upon the rights guaranteed to me by the U.S.—Fifth Amendment to the U.S. Constitution.

. . .

Q: Where do you live?

A: I refuse to answer that question based on the rights guaranteed to me by the Fifth Amendment to the U.S. Constitution.

Q: What is your race?

A: I refuse to answer that question based on the rights guaranteed to me by the Fifth Amendment to the U.S. Constitution.

Q: What is your age?

A: I refuse to answer that question based on the rights guaranteed to

me by the Fifth Amendment to the U.S. Constitution.

Q: Is Sam Dickson your attorney?

A: I refuse to answer that question based on the rights guaranteed to me by the Fifth Amendment to the U.S. Constitution.

What is also made clear from the deposition is that this refusal to answer any question was the result of prior discussion between Shirley and his attorney, Dickson.

MR. SPEARS: Directing the question to Mr. Dickson, let me just, for the sake of convenience, if nothing else—are you in a position to advise me as to whether or not it is your understanding of your client's intention that he respond to any question with an invocation of the Fifth Amendment?

MR. DICKSON: That is my understanding.

MR. SPEARS: So that in sitting here this morning, you understand—and again I'm restating it just so that I make certain I'm clear on it, an[d] that the record is clear—that there is no line of inquiry that you can anticipate that I might want to go into—

MR. DICKSON: That you be my anticipation.

MR. SPEARS: That would be met with anything other than an invocation of the Fifth Amendment by your client?

MR. DICKSON: That is correct.

MR. SPEARS: All right. Have you had an opportunity to discuss this matter generally with your client, as far as the invocation of the Fifth Amendment?

MR. DICKSON: Yes.

MR. SPEARS: All right. And that was before our being present here this morning? That is to say, before the deposition?

MR. DICKSON: That's correct.

Shirley's refusal to cooperate during his deposition constituted a willful and deliberate disregard of the judicial process and the rights of plaintiffs. It cannot be said to have arisen from confusion or ignorance, given his prior consultation with his attorney. Under the federal discovery rules, a party to a civil action is entitled to all information relevant to the subject matter of the action before the court unless such information is privileged. Fed.R.Civ.P. 26(b)(1). Silence here, in response to questions that could not conceivably result in an injurious disclosure, cannot be justified. Without "reasonable cause to apprehend danger from a direct answer", the Fifth Amendment privilege is not applicable. *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818. Given the circumstances of this deposition, and the apparent tactical quality of the Amendment's invocation, the motion to compel will be granted.[1]

■ Having found that the motion to compel is justified, the Court must next address the question of plaintiff's expenses in bringing this motion. All federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties. *See, Carlucci v. Piper Aircraft Corp., Inc.*, 775 F.2d 1440, 1446 (11th Cir.1985). The imposition of sanctions for failure to provide discovery rests with the sound discretion of the district court. *See, National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Properties International Ltd. v. Turner*, 706 F.2d 308 (11th Cir.1983). Under the 1970 amendment to rule 37(a)(4), unless the Court finds that opposition to the motion was substantially justified, expenses are to be awarded. This amendment was intended to encourage the more frequent use of award of expenses to discourage unnecessary recourse to the courts. *See, 4A Moore's Federal Practice ¶ 37.02[10]* Had Shirley, or his attorney, advised plaintiff's counsel of his intent to avoid every question, the time and expense of a useless deposition could have been avoided. Defendant's attorney made no re-

---

**1.** The Court notes the language of rule 37(b) which states:

(b) Failure to Comply with Order.

(1) ... If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the district in which the deposition is taken, the failure may be considered a contempt of that court.

sponse to this motion within the time period allotted by the local rules of this Court. In a response filed over thirty days late, defendant's attorney concedes that Shirley's failure to respond to any question other than his name "may have been without justification." Having found that Shirley's refusal to answer was a willful and deliberate attempt to obstruct appropriate discovery, the Court finds it proper to impose upon defendant Shirley the costs of the attorney's fees and the court reporter incurred in taking the deposition.[2]

Finally, as to the motion to extend discovery, the motion will be granted, and discovery extended for sixty days following the completion of the deposition of Shirley. Shirley's deposition shall take place at a time agreed upon by the parties, within two weeks of the date of this Order.

ACCORDINGLY, the motion to compel discovery as to defendant Shirley is GRANTED, and sanctions are imposed on defendant Shirley in the amount of $198.00, payable to plaintiff's attorney. The motion to extend discovery is GRANTED as set forth above.

---

**2.** The Court notes that should further discovery sanctions be necessary following this order to compel, and should the Court find the defendant's attorney responsible for failure to comply with the discovery order, he may be held personally liable for an award of fees and expenses caused by such failure. *Hawkins v. Fulton County,* 96 F.R.D. 416 (N.D.Ga.1982); Fed.R. Civ.P. 37(b).