Grant v. NH State Prison Warden          CV-95-371-M    03/07/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Eric Grant

    v.                                             Civil No. 95-371-M

Michael J. Cunningham, Warden
New Hampshire State Prison


**O R D E R**


Eric Grant petitions pro se for a writ of habeas corpus
pursuant to 28 U.S.C.A. § 2254, on the grounds that his guilty
plea in state court, to a charge of second degree murder, was
neither voluntary nor knowing nor intelligent due to the
influence of medication and ineffective assistance of counsel.
The state moves for summary judgment, and Grant objects,
asserting a cross motion for summary judgment in his favor.  For
the following reasons, summary judgment is granted in favor of
the state, and Grant's petition for habeas corpus relief is
denied.


**BACKGROUND**

Grant is incarcerated in the New Hampshire State Prison,
serving a sentence of twenty-seven years to life for second
degree murder (related to the beating death of his late wife).

From his arrest on October 8, 1990, until he pled guilty and was sentenced in the spring of 1991, Grant was held without bail at the Strafford County Jail.  While there, Grant was treated with Doxepin for depression and anxiety.

In February 1992, Grant was notified that he was being sued in an equity action filed in New Hampshire state court to determine entitlement to the proceeds of his deceased wife's life insurance policies and retirement plans.  The petitioners in the insurance action argued that although Grant was the named beneficiary, he was not entitled to recover the benefits because he had pled guilty to the second degree murder of his wife.  Grant, appearing pro se, filed a motion to withdraw his guilty plea on December 11, 1992, arguing that his plea was not knowingly or voluntarily entered due to his mental state, the effects of medication, and ineffective assistance of counsel.  Grant then objected to the petitioners' motion for summary judgment in the insurance action on the grounds that his guilty plea should not bar him from recovering benefits while his motion to withdraw was pending.  On April 7, 1993, the court granted summary judgment in favor of the insurance petitioners and against Grant.

The same state court judge who presided in the insurance action, Mohl, J., was assigned to Grant's motion to withdraw his

2

guilty plea. In June 1993, Grant, through counsel, moved to recuse Judge Mohl from presiding at the hearing on Grant's motion to withdraw his guilty plea. Grant challenged Judge Mohl's impartiality on the grounds that the Judge's summary judgment order in the insurance action, in which he had determined that Grant was disqualified from receiving his wife's insurance benefits based on his guilty plea, created a conflict precluding him from deciding the validity of his guilty plea. Judge Mohl declined to disqualify himself, finding no grounds to support disqualification.

An evidentiary hearing on Grant's motion to withdraw his guilty plea was held on September 24 and October 6, 1993. Three witnesses who had had close relationships with Grant testified about their observations of him after the murder and while he was in jail. Grant's attorney from the criminal proceedings testified about their relationship and his representation of Grant. Two psychiatric expert witnesses, one for each side, testified about Grant's mental condition and the effects of Doxepin, the medication he was taking prior to and during the plea. In a written order issued on October 19, 1993, the court denied Grant's motion to withdraw his guilty plea. The court concluded that the record of Grant's guilty plea showed a voluntary and intelligent plea and that Grant had failed to

demonstrate by clear and convincing evidence that his plea was entered involuntarily or without his understanding.

Through counsel, Grant appealed the denial of his motion to the New Hampshire Supreme Court. Following briefing and oral argument, the trial court's decision was affirmed without a written opinion. Grant, pro se, then filed his petition for a writ of habeas corpus in this court.

## DISCUSSION

In his petition for habeas relief, Grant asserts that he pled guilty while under the incapacitating influence of Doxepin and without effective assistance of counsel, which prevented him from making a voluntary or knowing guilty plea. The state asserts that the record from Grant's state court proceedings demonstrates that his guilty plea was constitutionally sufficient.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Fed. R. Civ. P. 81(a)(2)(Federal Rules of Civil Procedure apply in habeas proceedings to the extent not inconsistent with practice established by statute); Rules Governing § 2254 Cases, Rule 11 (same). In a § 2254 action, "a determination after a

4

hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit" listed deficiencies in the state proceeding. 28 U.S.C.A. § 2254(d).[1] The petitioner carries the burden to prove by "convincing evidence" that the state court's factual findings are erroneous. § 2254(d); Sumner v. Mata, 449 U.S. 539, 551 (1981). While the state court's findings of historical fact are presumed to be correct, legal conclusions and determinations based on mixed questions of law and fact are subject to de novo review. See

---

[1] Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1218 (April 24, 1996). The parties do not address the amendment, apparently assuming that the pre-amendment version of the statute applies in this case, which was filed before April 24, 1996. Retroactive application of the amendment is an unsettled question of law. See, e.g., Berryman v. Morton, 100 F.3d 1089, 1103-04 (3d Cir. 1996)(discussing difference in circuits' opinions on the issue); Lindh v. Murphy, 96 F.3d 856 (7th Cir. 1996)(en banc)(holding amendment applied retroactively in non-capital cases), cert. granted,117 S. Ct. 726 (1997). It is unnecessary to resolve that issue in this case, however, because the amendment makes habeas relief more difficult, see Pettiway v. Vose, 100 F.3d 198, 200 n.1 (1st Cir. 1996), and even under the more lenient pre-AEDPA rules petitioner is not entitled to relief.

Thompson v. Keohane, 116 S. Ct. 457, 464-67 (1995); Scarpa v. Dubois, 38 F.3d 1, 9 (1st Cir. 1994), cert. denied, 115 S. Ct.940 (1995).

A.  **State Court's Factual Findings**

The state court's factual findings, as set out in its written order, "Order on Defendant's Motion to Withdraw Guilty Plea" issued on October 19, 1993, are summarized as follows. Grant was arrested on October 8, 1990, for the murder of his wife, and he was thereafter held at the Strafford County Jail pending trial. While at the jail, Grant was treated first with Valium and then with the medication Doxepin for depression and anxiety. During this time, Grant's Doxepin dosage was increased to a therapeutic level of 150 milligrams each day. He continued to be treated with Doxepin until late June 1991 and then resumed treatment in August until March 1992.

A social worker met with Grant twice a week from November 1990 until the end of March 1991. The social worker issued a report in May 1991 in which he described Grant's mental state during treatment. The report states that Grant had moderate success with Doxepin treatment to relieve symptoms of major depression, anxiety, and sleep disorder. The social worker also reported that Grant's speech was initially disorganized but

6

became articulate during treatment. He noted that Grant's insight was good, his judgment was fair, he took responsibility for his actions, and he was courteous and thoughtful during therapy.

From the time of his arrest through his guilty plea and sentencing, Grant was represented by Donald Eckberg, an attorney with twenty-five years of experience. Eckberg met with Grant several times to discuss his defense and the option of pleading guilty. He noted that Grant was upset and agitated but not dazed or confused. Eckberg described Grant's mental state as appropriate for a person in jail and charged with murdering his wife.

In April 1991, the state offered a plea agreement under which Grant would plead guilty to second degree murder and the state would recommend a sentence of twenty-eight years to life. When Eckberg notified Grant of the offer, Grant responded that twenty-eight years was too much, and said that he would agree to twenty-five years. Eckberg consulted the law firm of Twomey and Sisti, a firm experienced in criminal representation, for their evaluation of the state's offer. Eckberg explained the penalties for first and second degree murder as well as manslaughter to Grant. Grant eventually agreed to a state offer to recommend a

sentence of twenty-seven years to life in exchange for Grant's guilty plea to second degree murder.

The plea hearing was held on April 19, 1991. Eckberg reviewed the pros and cons of the guilty plea and the acknowledgment of rights form with Grant on that day. Eckberg did not know, and did not ask, whether Grant had taken medication on the day of the plea hearing. He remembered that Grant did not appear sedated, confused, or agitated, but instead seemed calm, rational, coherent, and relieved to plead guilty. During the hearing, the judge inquired about Grant's understanding and intent to plead guilty. The court reviewed the hearing transcript and determined that the requirements of <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), were met.

Based on the evidence presented at the hearing on Grant's motion to withdraw his guilty plea, the court determined that even while being treated with Doxepin, Grant was capable of communicating, observing and comprehending his situation, and was not operating in a "Doxepin haze." The court credited the state's psychiatric witness's testimony that Doxepin was an appropriate treatment of Grant's depression and that it did not have a sedative side effect, that Grant's recollections demonstrated that he was oriented and involved in his defense at the time of his plea, and that his described behavior at that

8

time showed that he had an alert, logical, and rational thought process.  The court further found that the change in Grant's behavior reported by three witnesses, who were Grant's relatives and friends, was more likely caused by the change in Grant's circumstances than by the influence of Doxepin.

The presumed reliability of a state court's factual findings is lost if the state court proceeding did not provide a full, fair, and adequate hearing, or if the petitioner was "otherwise denied due process of law in the State court proceeding." § 2254(d)(6),(7).  Grant also challenges the fairness of the state court proceeding on his motion to withdraw his guilty plea, asserting that Judge Mohl was biased against his motion because the judge's summary judgment decision in the insurance benefits action would be undermined if Judge Mohl decided that Grant's guilty plea was invalid.

To show unconstitutional bias, Grant must "overcome a presumption of honesty and integrity in those serving as adjudicators" by identifying an influence strong enough that it "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." Withrow v. Larkin, 421 U.S. 35, 47 (1975); see also Del Vecchio v. Illinois Dept. of Corrections, 31 F.3d 1363, 1370-80 (7th Cir. 1994), cert. denied, 115 S. Ct. 1404

9

(1995). A speculative, contingent, or remote interest does not violate the due process requirement. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 826 (1986). Grant's assumption, not based on any evidence of actual bias, that Judge Mohl would be inclined to rule against his motion to withdraw his plea merely to preserve the viability of his earlier civil order in the insurance case is far from convincing, and does not begin to meet the standard required to establish a due process violation.

Absent other procedural error, and no others are raised here, the presumption of correctness afforded a state court's factual findings is discarded only if the findings are not fairly supported by the record. § 2254(d)(8); Purkett v. Elem, 115 S. Ct. 1769, 1771 (1995); Pettiway v. Vose, 100 F.3d 198, 202 (1st Cir. 1996). A careful review of the transcripts of the hearing on Grant's motion to withdraw his plea, which are included in the record, shows ample support for the state court's findings of fact. Although evidence was presented at the hearing in support of Grant's position that his treatment with Doxepin, or his depressed mental state, incapacitated him to some degree, significant evidence in the record also supports the contrary view as found by the state court.

At the plea hearing, the judge asked Grant a series of questions about his understanding of the charges against him, the

terms of the plea agreement, his consultation with counsel, and the rights he would waive by pleading guilty. After Grant indicated that he understood by answering "Yes, sir" to each question, the judge made the following observations:

> Now, this morning you give absolutely no appearance to me of having taken anything that would interfere with your ability to effectively waive your right to trial, to give up you[r] trial rights. By that I mean, you give no appearance of having imbibed in any form of liquor or other drug, be it medicine or whatever. Are you under treatment for anything?

Grant answered "No, sir," although he was at that time under treatment with Doxepin for depression. The judge then asked Grant's counsel to confirm his observations of Grant's ability to waive his rights, and counsel responded: "Yes, sir. To the best of my knowledge and observation, Mr. Grant is fully aware of what's going on, and he is under the influence of nothing foreign."

At the hearing on Grant's motion to withdraw his plea, the expert's testimony conflicted, but the state's expert testified that Doxepin did not adversely effect Grant's abilities to participate in his defense or plead guilty. Also, although three witnesses with close ties to Grant described him during the period before his guilty plea as distraught, confused, not recognizing or understanding his surroundings, "spacy," and unable to communicate as he had in the past, Eckberg testified

11

that Grant was fully able to participate in the plea negotiations and did not appear confused, disoriented, or sedated then or when he entered his plea. Accordingly, as the record fairly supports the state court's factual findings, they are presumed to be correct.

**B.** **Constitutionality of Guilty Plea**

In a § 2254 habeas proceeding, the validity of a guilty plea is a question of federal law. See Marshall v. Lonberger, 459 U.S. 422, 431 (1983). A guilty plea waives "three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." Parke v. Raley, 506 U.S. 20, 29 (1992). To be valid, therefore, the plea must be the defendant's voluntary, knowing, and intelligent decision, Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242-43 (1969), that is a "voluntary and intelligent choice among alternative courses of action open to defendant," North Carolina v. Alford, 401 U.S. 25, 31 (1970).

A defendant must be competent to make the choice to waive his constitutional rights by pleading guilty. Brady, 397 U.S. at 758; see also Johnson v. Zerbst, 304 U.S. 458, 468 (1938). To be competent, a defendant must have "'sufficient present ability to

12

consult with his lawyer with a reasonable degree of rational understanding' and [have] 'a rational as well as factual understanding of the proceedings against him.'" <u>Godinez v. Moran</u>, 509 U.S. 389, 396, 398 (1993) (quoting <u>Dusty v. United States</u>, 362 U.S. 402 (1960) and adopting the <u>Dusty</u> competency standard for guilty pleas).

The state court found that Grant was not operating in a "Doxepin haze" during the plea negotiations and when he pled guilty. Instead, the court found, Grant understood and comprehended his situation. For instance, Grant interacted with his counsel in the negotiation process directing him to get a more favorable recommended sentence from the state before accepting the offered plea agreement. Grant's own testimony at his hearing to withdraw his plea indicates that he remembers the circumstances and events leading up to and during his plea. Thus, as the record of Grant's mental state during the plea negotiations and when he pled guilty shows that he was able to rationally interact with his counsel and to understand the proceedings, he was competent to plead guilty. The record also shows that Grant made a voluntary, knowing, and intelligent decision to plead guilty, albeit one that he later regretted and wished to change. A change of heart does not render a constitutionally sufficient plea invalid.

13

## C.  Ineffective Assistance of Counsel

Grant contends that his counsel, Donald Eckberg, was ineffective both in failing to properly inform him of the length of the sentence the state offered to recommend and in failing to discover and notify the court that Grant was being treated with Doxepin during the plea hearing.  To show that Eckberg's representation was constitutionally deficient, Grant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984).  Grant must show that "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is reasonable probability that, but for counsel's error, the result of the proceedings would have been different."  Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996).  Whether a defendant was denied effective assistance of counsel presents a mixed question of law and fact that must be considered de novo rather than relying on the findings of the state court.  See Scarpa, 38 F.3d at 9.

Even if Grant could satisfy the first prong by showing that Eckberg's performance fell below an objective standard of reasonableness, he certainly has not demonstrated the prejudice element of the second prong.  To clear the high hurdle of the prejudice element, Grant "must affirmatively prove 'a reasonable probability that, but for counsel's unprofessional errors, the

14

result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (quoting Strickland, 466 U.S. at 694).  When a defendant has pled guilty, "the prejudice prong of the test requires him to show that, but for his counsel's unprofessional errors, he probably would have insisted on his right to trial." United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995).

Grant contends that if Eckberg had properly inquired and informed the court of Grant's medication, the court would not have accepted his guilty plea.  However, it has already been determined that Grant's judgment was not sufficiently impaired, if it was impaired at all, by either his mental state or his Doxepin treatment to question the validity of his guilty plea. Accordingly, Grant cannot succeed on his argument that he suffered from the effects of a "Doxepin haze" and that the court would have rejected his guilty plea for lack of capacity to plead.

Grant also argues that he would not have pled guilty to second degree murder if he had been thinking clearly and if he had been properly advised about the length of the sentence.  He contends that because he did not intend to kill his wife and believed that her death was an accident, he lacked the requisite

15

intent for second degree murder and, therefore, should not have pled guilty with the possibility of a life sentence. Grant's assertions that Eckberg failed to properly advise him of the length of the recommended sentence do not constitute prejudice. The facts found by the state court do not support Grant's memory that Eckberg misled him about the sentence by not sufficiently explaining that the maximum sentence was life. Even if Eckberg had given Grant inaccurate information about his sentence, "[a]n attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the prejudice prong of the ineffective assistance test." LaBonte, 70 F.3d at 1413. In addition, Grant admits that he realized just before he pled guilty, when he reviewed the paper work with Eckberg, that the recommended sentence would be twenty-seven years to life. Further, during the plea colloquy, the judge asked Grant if he understood the terms of the plea agreement and that he "could be sentenced to a term of up to life in prison." Grant answered, "Yes, sir." Accurate information about the sentence counteracts any inaccuracy that might have previously occurred and negates any possible prejudice that might have been caused by Eckberg's representations. See id.. As Grant has failed to sustain his burden of proof on the prejudice element, he cannot succeed on his claim of ineffective assistance of counsel. Id. at 1413-14.

16

Accordingly, because the undisputed facts establish that Grant's guilty plea was knowingly and voluntarily and intelligently entered and was not prejudiced by the ineffective assistance of counsel, the state is entitled to judgment as a matter of law.

**CONCLUSION**

For the foregoing reasons, the state's motion for summary judgment (document no. 8) is granted.  The clerk of court is directed to close the case.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

March 6, 1997

cc:  Eric Grant
     John P. Kacavas,
        Assistant Attorney General

17