[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION OF MOTION TO STAY/MOTION TO EXPEDITE
I.
The instant matter involves several claims brought under a fictitious name against the defendant Hospital for Special Care (hereinafter, "the hospital") and its employee James Duke for damages resulting from two alleged sexual assaults inflicted by the individual defendant, a respiratory therapist, while the plaintiff was in the hospital.
The plaintiff is a 55-year-old woman who suffers from amyotrophic lateral sclerosis (ALS), commonly known as Lou Gehrig's disease. As stated in the plaintiff's memorandum, at the time of the assaults, she was paralyzed from the neck down, unable to move her body, unable to breathe independently, and unable to speak. She communicated, by blinking her eyes to indicate "yes" and turning her head left to right to indicate "no".
The plaintiff seeks damages against the hospital on a number of grounds including, but not limited to, medical malpractice, respondeat superior, negligent infliction of emotional distress, and breach of contract. The charges against James Duke include medical malpractice and negligent infliction of emotional distress. There is also a loss of consortium claim brought by the plaintiff's husband.
As a result of the plaintiff's medical condition, her attorney filed a motion for an expedited trial and scheduling order. The plaintiff maintained that not only was she in imminent risk of dying, but that she would soon be unable to communicate with counsel and assist with the prosecution of her case. As the individual defendant has criminal charges now pending, both he and the hospital moved to stay the matter pending the outcome of the criminal case. The defendants argued that, in addition to the pleadings not being closed and discovery as yet incomplete, the plaintiff has made no showing that there is a need for an expedited trial. Indeed, the individual defendant, in his December 2, 1997 memorandum, labeled the plaintiff's arguments as CT Page 12949 "irrelevant assertions". The court, Lavine, J, scheduled a hearing at which this court heard from her treating physician, Dr. Daniel Gerardi, on her medical condition.
Dr. Gerardi testified that he first treated the plaintiff in April 1996 and has continued to treat her since that time. He indicated that to the extent she once could communicate with her eyes and head, it is his medical opinion she is no longer able.[1]
Dr. Gerardi also testified that the plaintiff's life expectancy was one to three years; however, she is connected to life support systems and if they were disconnected she would die immediately. She is completely cognizant — the disease does not affect her mental capabilities.
The defendants now argue that since she may live for one to three years, her reasons for an expedited trial have not been proven and thus there is no justification to proceed with the civil matter.
 II. A.
The central issue in this case concerns the confrontation between the plaintiff's right to have her civil matter adjudicated while alive and Mr. Duke's privilege to exercise hisFifth Amendment rights. The hospital is also obviously impacted by its employee's use of the privilege.
The constitution of Connecticut, article first, § 10, provides: "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."
General Statutes § 52-192 provides in relevant part that "actions brought by or against any person sixty-five years of age or older or who reaches the age of sixty-five during the pendency of the action . . . shall have precedence over all other civil actions in respect to the order of trial . . ." While the plaintiff's claim for an expedited trial is not based on advanced age, it is certainly instructive that the legislative history indicates that the intent of the legislature was to ensure that CT Page 12950 persons have their actions adjudicated while they are alive. The statute was drafted for the benefit of the large identifiable class of persons who are at high risk of dying prior to such adjudication, namely persons sixty-five years of age or older. "This bill . . . gives precedence and order of trial to all actions brought by or against any person sixty-five years of age or over . . . This would make it possible for an older person to have his case reached before he was no longer with us." 7 H.R. Proc., Pt. 2, 1957 Sess., p. 991, remarks of Representative Eddy. "[T]his bill was primarily introduced to give some consideration to people over sixty-five years of age who are being sued or are plaintiffs in any action. We all know that our Superior Courts are so functioning today that a case might be three, or four or five years old and by the time the case is reached either the plaintiff or the defendant who is sixty-five years old at the time of institution of this action had either died or was in such poor condition that he couldn't come to court. This bill was introduced to alleviate that situation." 7 S. Proc., Pt. 2, 1957 Sess., p. 670, remarks of Senator Borden.[2]
In County of New Haven v. Porter, 22 Conn. Sup. 154,164 A.2d 236 (1960), the court reviewed § 52-192. "The legislative history of this enactment leaves no doubt that by passage of the legislation the General Assembly intended to expedite the trial of cases of older individual litigants who might die or become incapacitated by age before a trial of their cases could be reached in ordinary course." Id., 156. The court found the case "not within one of the statutory classes of case entitled to privilege in assignment of trial. This does not mean, however, that the court is without power to grant the plaintiff's claim on other grounds. It cannot be doubted that the Superior Court as a constitutional court of general trial jurisdiction is empowered to direct the order in which cases before it shall be tried as the ends of justice and the business before it may dictate . . . Cases may at any time be placed upon a trial or assignment list for trial or disposition by order of the court." (Citations omitted.) Id., 156-57. "That power [of the court to manage its dockets and cases] may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases . . . Simply stated, [t]he inherent powers of . . . courts are those which are necessary to the exercise of all others."Sprager v. Koenig, 42 Conn. App. 617, 620, 681 A.2d 323, cert. CT Page 12951 denied, 239 Conn. 935, 684 A.2d 709, 239 Conn. 936, 684 A.2d 709
(1996); see also In the Matter of Presnick, 19 Conn. App. 340,348, 563 A.2d 299, cert. denied, 213 Conn. 801, 567 A.2d 832
(1989) ("Each court in the Connecticut constitutional hierarchy . . . is free to formulate its own rules relating to the practice and procedure to be followed in that court . . . Furthermore, any court established by our state constitution has an inherent power, independent of any statute, to make rules governing the procedure to be followed in it."); State v.Clemente, 166 Conn. 501, 514, 353 A.2d 723 (1974) ("courts have an inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and facilitate the administration of justice as they deem necessary.").
Finally, Practice Book § 273 provides: "[t]he court may, on it own motion or on the motion of a party and upon a showing of extraordinary circumstances, order a case to be assigned for immediate trial."[3]
 B.
The United States and Connecticut constitutions ensure that all persons enjoy a constitutional right of immunity from being compelled to testify against themselves. U.S. Const., amend. V; Conn. Const., art. I, § 8; General Statutes § 52-199 (a). Our Supreme Court has held that "[t]he fifth amendment privilege against self-incrimination . . . privileges [the individual] not to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Olin Corp. v.Castells, 180 Conn. 49, 53, 428 A.2d 319 (1980). However, "[n]othing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter. SeeUnited States v. Kordel, 397 U.S. 1, 11, 90 S.Ct. 763, 769,25 L.Ed.2d 1 (1970) (the government can conduct civil and criminal proceedings concerning the same subject matter simultaneously, and need not `defer civil proceedings pending the ultimate outcome of a criminal trial')." Nosik v. Singe, 40 F.3d 592, 596
(2nd Cir. 1994). Yet, "[w]hile the Fifth Amendment precludes drawing adverse inferences against defendants in criminal cases, it does not forbid adverse inferences against the parties to civil actions when they refuse to testify in response to probative evidence offered against them . . ." LiButti v.United States, 107 F.3d 110, 121 (2nd Cir. 1997). CT Page 12952
As noted in Federal Sav. and Loan Ins. Corp. v. Molinaro,889 F.2d 899 (9th Cir. 1989), "[a] court must decide whether to stay civil proceedings in the face of parallel criminal proceedings in light of the particular circumstances and competing interests involved in the case. Securities Exchange Comm'n v. DresserIndus., 628 F.2d 1368, 1375 (D.C. Cir.), cert. denied,449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Obviously a court should consider the extent to which the defendant'sfifth amendment rights are implicated. Id. at 1375-76. Other factors a court should consider will vary according to the case itself, but generally will include: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." Id., 902-03. The court found that the lower court did not abuse its discretion by denying the defendant's motion for a stay finding that the defendant had already given a partial deposition to the plaintiff's attorneys, and that nothing prevented the defendant from responding with information that did not tend to incriminate himself. "Under these circumstances, any burden on Molinaro'sfifth amendment privilege was negligible." Id., 903.
Judge McWeeny, in an interlocutory appeal hearing in the case of Farricielli v. State of Connecticut, Department ofEnvironmental Protection, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 5386369 (January 8, 1997) (18 CONN. L. RPTR. 520), utilized the analysis inMolinaro and vacated an earlier stay order finding that the public interest in proceeding with the administrative action outweighed the burden to the corporate defendants created by the co-defendant's invocation of his fifth amendment rights. He stated, "the general rule is that parallel proceedings may proceed; not that they generally should be prohibited." Id., 522.
In this case, despite the rather peculiar argument made by the defendants that the plaintiff is in no risk of dying, it seems rather apparent to this court that her need for an expedited trial is obvious. The plaintiff has advised this court that the criminal trial was originally scheduled for November CT Page 12953 1996. At the hearing, this court was advised that the individual defendant had entered into a stipulated administrative sanction. Further, the defendants also indicated that as a result of entering into that agreement the individual defendant sought to dismiss the pending criminal charges on a double jeopardy argument. That motion was denied, Susco, J, on August 7, 1997, and an interlocutory appeal was filed.[4] It is obvious that these procedural maneuvers have caused a further delay in the criminal proceedings.
Finally, it is important to note that the individual defendant stated in his December 1997 memorandum of law in support of objection to motion for scheduling order:
 Jane Doe's ability to communicate with her counsel has very little to do with the practical aspects of making a case ready for trial . . . It is doubtful that she will be able, to offer a great deal of input by way of strategy relative to the manner in which the case should be prosecuted. Furthermore, her deteriorated condition and the nature of her disease process do not militate for an expedited trial. Assuming the plaintiff recovered a substantial award, it would make no difference relative to her medical condition. There has been no argument advanced that she would receive better medical care or that some treatment is available which would reverse her disease upon which an award of money damages would be spent.
 Id., 8-9.
This court does not agree. Perhaps, just perhaps, the plaintiff would like to know the outcome of her case before she dies. Under the Dresser, supra, analysis, it is clear that the plaintiff is the party that suffers the most prejudice from delay.
 C.
Lastly, the cases cited by the defendant where stays have been entered are distinguishable. United States v. All Assets ofStatewide Auto Parts, 971 F.2d 896 (2nd Cir. 1992), and UnitedStates v. 4003-4005 5th Ave., Brooklyn, NY, 55 F.3d 78 (2nd Cir. 1995), specifically dealt with summary process forfeiture proceedings subsequent to drug related arrests, wherein the court CT Page 12954 weighed the immediate purpose of the proceeding, the taking of constitutionally protected property, against the right of the defendants to invoke their fifth amendment rights. The courts in these cases found that there was no public interest affected by postponing the civil action until the conclusion of the criminal trial. The public interest in the present case is the protection of the constitutional and statutory right held by the plaintiff, and others who may be similarly situated, to have a trial while still alive.
 III.
Jane Doe's situation is tragic; moreover, based on Dr. Gerardi's testimony, Jane Doe will, in all probability, not be alive at the end of the criminal proceedings.
Under the facts of this case, the question posed earlier is not even close. Given the terminal nature of her illness, the fact that she is being kept alive by a respirator and in light of the serious nature of the allegations, it is clear that her circumstances are extraordinary. Extraordinary circumstances require exceptional consideration. The plaintiff's right to an expedited trial clearly outweighs the burdens placed on the defendants. Justice, our constitution, our statutes, our rules and finally, basic decency require this decision.[5]
BERGER, J.