Criminal Case Template












COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



MARIA CRISTINA GALINDO,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.

§


§


§


§


§

No. 08-01-00230-CR


Appeal from the


41st District Court


of El Paso, Texas


(TC# 20000D01903)


MEMORANDUM OPINION


 This appeal arises from a jury conviction for capital murder. The State did not seek
the death penalty. Punishment was assessed as mandatory confinement for life. Appellant,
Maria Galindo, argues two points on appeal: (1) The trial court erred in denying a motion
to suppress the confession and (2) the state engaged in prosecutorial misconduct. We affirm
the judgment of the trial court.

I. SUMMARY OF THE EVIDENCE


 Appellant placed an emergency call on March 9, 2002, reporting that her child, ten-month old Jose Jr., had vomited, was not breathing properly and was failing to respond to
her. This phone call was made after Appellant had first called her husband, who told her to
call emergency services and that he was on his way home. Firemen arrived first, followed
by paramedics. The time between the call and the paramedic-response was six minutes. The
paramedics in attempting to render medical aid, found the baby cold to touch, lifeless, bluish-purple in color and presumed dead.

 Testimony from one of the attending paramedics indicated medical conditions termed
"modeling" and
"distension" had transpired. This testimony indicated the modeling, a condition occurring
after death and resulting in coagulation and pooling of blood in certain areas due to gravity,
and the distention, which is swelling, were very distinctive. Further testimony provided
Appellant showed no apparent emotion at the hospital, while the bereaved father cried and
held the infant. Testimony provided that the medical conditions modeling, distension, and
coldness to touch, transpire after a period of time. Intubation of the victim, i.e., a process for
dislodgment of airway obstructions using a small suction tube, resulted in large amounts of
food, vomit, and fluid being extracted. Further attempts at resuscitation at the hospital were
unsuccessful. 

 The record shows that Appellant gave police three statements. The first statement
occurred on March 9, 2000 at approximately 4:40 p.m., a second statement on March 10,
2000 at around 5 p.m., and a third statement on March 10, 2000. Prior to each statement,
Appellant was advised of her Miranda rights. Appellant made a motion to suppress the three
statements. After a pre-trial hearing, the trial court overrruled Appellant's motion to
suppress. 

 The State presented evidence that the police did not attempt to coerce a statement, nor
did the Appellant display a lack of lucidity or drug-induced behavior. Appellant's verbal
statements, spoken in Spanish, were memorialized in English by one detective; and the
testimony was then re-affirmed by another officer. This second officer would orally translate
the written English statements into Spanish for Appellant's benefit. 

 Appellant's third statement to the police was made after being placed under arrest, 
due to the unexplained injuries revealed in the autopsy. This last statement began by stating
she loved her child very much, but had problems and needed help. Appellant revealed that
when the victim had cried three days prior, on Monday, March 6, 2000, she had "slapped him
on the back of the head." Appellant continued that on Wednesday, March 8, 2000, she had
struck the infant on the mouth "like a karate chop." On the day of Jose Jr.'s death, Thursday,
March 9, 2000, Appellant offered an admission that when the child began crying after
finishing his bottle and lentils, she had placed her hand over the victim's mouth and kept it
there for "one or two minutes." Appellant then testified that the child stopped crying and "he
fell asleep." These statements were provided by Appellant prior to trial and read into the
record by Detective Andrea Baca, as part of her testimony as the investigating officer. The
detective was cross-examined on the content of Appellant's statements. 

 Chief Medical Examiner for El Paso County, Dr. Juan Contin, performed the first
autopsy upon Jose Jr. He provided expert medical opinion that indicated he found evidence
on the child's corpse that would be consistent with the actions stated in the third confession,
specifically, cerebral swelling or edema and aspirated food into the lungs. He stated cause
of death as asphyxiation as a result of suffocation. On cross-examination, Dr. Contin
testified that Jose Jr.'s head injuries constituted serious bodily injury. On redirect
examination, the physician clarified that the brain swelling was consistent with asphyxiation
resulting from covering an individual's mouth and nose.

 A second expert witness, Dr. Harry Lee Wilson, a pediatric pathologist at Providence
Hospital testified. His testimony corroborated the findings of Dr. Contin. To refute the
State's expert witness testimony, the defendant brought forth two expert witnesses: Dr.
Gretchen Lipke and Dr. Fausto Rodriguez. This was followed by the testimony of the
Appellant. 

 During trial, Appellant was asked by the prosecutor whether she had made statements
to her husband, which threatened the life of the child. Appellant denied making any such
statement. Appellant's counsel objected, requested a jury instruction to disregard and moved
for mistrial. The trial court sustained the objection, provided the requested instruction, and
denied the motion for mistrial. The court then provided curative instruction to the jury as
follows:

 As I explained to you in the beginning of the trial, when I sustain an objection,
that means you are not allowed to consider what answers have come
immediately before. You are instructed to disregard the question and the
answer. Continue.


The record shows there was no pre-trial motion in limine concerning the allegation. The trial
record is absent any warning from the judge or admonishment of the State for this line of
questioning or any other conduct through the proceedings. The State in its closing argument
never again makes reference to the statements in question. The jury returned a verdict of
guilt for the offense of capital murder. The court subsequently imposed a sentence of life
imprisonment. 

II. DISCUSSION

 In Issue No. One, Appellant asserts that the trial court erred in failing to suppress
Appellant's three statements. The standard for reviewing a trial court's ruling on a motion
to suppress is bifurcated, giving almost total deference to a trial court's determination of
historical facts and reviewing de novo the trial court's application of the law. Guevara v.
State, 97 S.W.3d 579, 582 (Tex. Crim. App. 2003)(citing Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997)). Addressing first the issue of facts, this "almost total deference"
to a trial court's determination is because of the trial court's exclusive fact-finding role, and
the trial court is in an appreciably better position to decide the issue. See Guzman, 955
S.W.2d at 89. This appellate court must leave any factual controversy within the realm of
the trial court. This appellate court must view the record evidence and all reasonable
inferences in the light most favorable to the trial court's ruling. Romero v. State, 800 S.W.2d
539, 543 (Tex. Crim. App. 1990).

 Now turning to the second prong, appellate review of "mixed questions of law and
fact" is de novo. See Guzman, 955 S.W.2d at 89. To determine whether a trial court's
decision is supported by the record, this court considers evidence adduced at the suppression
hearing, because the ruling was based on that evidence, rather than evidence introduced later.
See, e.g., Hardesty v. State, 667 S.W.2d 130, 135 n.6 (Tex. Crim. App. 1984). However, this
rule is inapplicable where the suppression has been "consensually re-litigated" by the parties
during trial on the merits. See, e.g., Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996). "Where the State raises the issue at trial either without objection or with subsequent
participation in the inquiry by the defense, the defendant has made an election to re-open the
evidence." Id. 

 The trial judge is the sole and exclusive trier of fact and judge of the credibility of the
witnesses and their testimony. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App.
2002). At the pre-trial hearing on the suppression of the statements, testimony established
that during the time of the admissions by Appellant, there were no difficulties conversing
with her in Spanish. After each of the three statements was taken, the statementswere read
back to the Appellant in Spanish. These witnesses testified to the ability and opportunity of
the Appellant to correct any of her three statements. This Court cannot determine whether
the Appellant or the police officer's testimony is to be given more weight as to admissibility;
that is a question to be answered by the trial court. See Bradley v. State, 960 S.W.2d 791,
800 (Tex. App.-- El Paso 1997, pet. ref'd)(holding that on a motion to suppress evidence, the
trial judge is the sole and exclusive trier of fact and judge of the credibility of witnesses,
including the weight to be given their testimony).

 After thoroughly examining the record, we find that Appellant was able to respond
to questions in a knowing and intelligent manner. Further, Appellant was given the
opportunity to correct her written statements throughout the process. Additionally, in
reviewing Appellant's testimony given at trial, via an interpreter, she demonstrated her ability
to correct inaccurate statements by both her attorney, (1) and the prosecution. (2) It is clear from
the record that Appellant was able to provide all testimony both knowingly and intelligently. 
 The United States Constitution declares that "No person . . . shall be each compelled
to give evidence against himself." U.S. Const. Amend. V. Additionally, the Texas
Constitution commands that a person "shall not be compelled to give evidence against
himself." Tex. Const. art. I § 10. However, this right is not self-executing and may be
waived if done, knowingly, voluntarily, and intelligently. See Brown v. State, 617 S.W.2d
234, 236 (Tex. Crim. App. 1981). A waiver of the right against self-incrimination is
determined from the totality of the circumstances. Castro v. State, 562 S.W.2d 252, 258
(Tex. Crim. App. 1978). 

 By reviewing the totality of the record, we find that the Appellant was Mirandized, 
not once or twice, but three separate times, each in her native language prior to each
admission. 

 An accused under the compulsion to make disclosures must assert the right against
self-incrimination in a timely manner or consider that right waived. United States v. Kordel,
397 U.S. 1, 10, 90 S.Ct. 763, 768, 25 L.Ed.2d 1, 9 (1970). Appellant could have invoked
such a right, but because she chose to give evidence against herself, she cannot now
complain. See id. She was not, within the record presented, compelled to testify. However,
there are exceptions to the self-execution of the right against self-incrimination and one of
those is found within the custodial setting. See Miranda v. Arizona, 384 U.S. 436, 467, 86
S.Ct. 1602, 1624, 16 L.Ed.2d 694, 719 (1966). Since the record establishes that Appellant
received notice that her statements may be used against her, in accordance with Miranda and
Tex. Code Crim. Proc. Ann. art. 38.22 § 2(b) (Vernon 1979) there is no such exception
available to her. 

 Appellant was further advised that statements she made may be used against her prior
to her three admissions; she received a Miranda Card, written in Spanish and which was read
to her, followed by her reading the Miranda warning back to the investigating officer. 
Appellant was further advised of her rights a fourth time by a magistrate after her third
statement. 


 It is clear from the totality of the circumstances, the repetition provided by the police
in alerting and reminding Appellant of her rights against self-incrimination before and while
in the custodial setting, the safeguards mandated in Miranda v. Arizona, supra were more
than satisfied. A waiver is sufficient if the accused understands that he or she has the right
to remain silent and that anything he or she says can be used against him or her. See
Colorado v. Spring, 479 U.S. 564, 574, 107 S.Ct. 851, 857-58, 93 L.Ed.2d 954, 966 (1987). 
 Finally, Appellant mistakenly asserts that Tex. Code Crim. Proc. Ann. art 38.22 §
1 (Vernon 2002) (3) indicates the confessions were inadmissable because the confessions were
not witnessed by "a person other than a peace officer." We find reliance on the statute
misplaced. The basic rules for statutory interpretation require that effect be given to all
words and phrases unless to do so would lead to absurd results which the legislature could
not possibly have intended. Hayden v. State, 66 S.W.3d 269, 278 (Tex. Crim. App.
2001)(citing Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). We first give
effect to the plain meaning of the statute, and "where the statute is clear and unambiguous,
the Legislature must be understood to mean what it has expressed, and it is not for the courts
to add or subtract from such a statute." Id. at 278-79. The plain meaning would indicate that
if the signatory was unable to affix his or her name to the statement; and in lieu, a mark was
needed. In such case, "a person other then a peace officer" would have to witness the
marking. For these reasons, Appellant's Issue No. One is overruled.

 In Issue No. Two, Appellant contends prosecutorial misconduct was committed by the
prosecution. During trial, a State's witness was prepared to introduce testimonial evidence
concerning an alleged threat against the life of the child by the Appellant to her husband. 
Prior to the introduction of any of this testimony, Appellant objected and voir dire was
conducted on its admissibility. The trial court found that the evidence was inadmissable. 
The witness was then excused and the jury was summoned. The prosecution later posed a
question to the Appellant, as to whether she made an alleged statement, which threatened the
life of the victim. Appellant once again objected, requested a jury instruction to disregard
and moved for mistrial. 

 Claims of prosecutorial misconduct are determined on a case-by-case basis. Perkins
v. State, 902 S.W.2d 88, 96 (Tex. App.--El Paso 1995), supplemented, 905 S.W.2d 452 (Tex.
App.--El Paso 1995, pet. ref'd)(citing Stahl v. State, 749 S.W.2d 826, 830 (Tex. Crim. App.
1988). Cases in which courts have found prosecutorial misconduct have occurred generally
when the prosecutor deliberately violated an expressed order of the court and the conduct
was so blatant as to border on contempt of court. Stahl v. State, 749 S.W.2d at 831.
Appellant must preserve error by (1) making a timely and specific objection, (2) requesting
an instruction that the jury disregard the matter, and (3) move for a mistrial. Tex. R. App.
P. 33.1; Cook v. State, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). In the case at bar,
Appellant preserved such error. Appellant began by objecting, and requesting a jury 

instruction. 

 The trial court responded by first sustaining the objection. The trial court then
provided curative instruction to the jury, explaining that when an objection is sustained the
question offered by the prosecution was to be disregarded. An instruction to disregard will
be presumed effective unless the facts of the case suggests the impossibility of withdrawing
the impression produced on the minds of the jury. Waldo v. State, 746 S.W.2d 750, 754
(Tex. Crim. App. 1988).

 Appellant also moved for mistrial. The denial or granting of mistrial is reviewed
under an abuse of discretion standard. Rojas v. State, 986 S.W.2d 241, 250 (Tex. Crim. App.
1998). Equally important is that a trial court abuses its discretion if it grants mistrial despite
the availability to cure the defect through a less drastic means. Brown v. State, 907 S.W.2d
835, 839 (Tex. Crim. App. 1995). Generally, a mistrial is only required when the improper
evidence is "clearly calculated to inflame the minds of the jury and is of such a character as
to suggest the impossibility of withdrawing the impression produced on the minds of the
jury." See Hinojosa v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999)(quoting Gonzales
v. State, 685 S.W.2d 47, 49 (Tex. Crim. App. 1987))(emphasis added). In all other situations,
the jury is presumed to follow the trial court's motion to disregard improperly admitted
evidence. Hinojosa, 4 S.W.3d at 253. 

 In review, the record is devoid of the prosecution violating an order from the trial
court, nor can the prosecution's conduct be viewed as contumacious. While the record
reflects that prosecution attempted to introduce evidence on two separate occasions with two
different witness, in each case Appellant's objections were sustained and inquiry into
admissibility occurred outside the presence of the jury. In the first case, no statement as to
the substance of the statement was introduced into evidence. In the second occurrence, the
jury received appropriate curative instructions to disregard the question from the prosecution. 
We find that the trial court did not abuse its discretion by sustaining the objection of
Appellant, providing curative instruction and denying the motion for mistrial. Appellant's
Issue No. Two is overruled.

 Having overruled each of Appellant's issues on review, we affirm the judgment of the
trial court.

July 31, 2003

 _______________________________________

 RICHARD BARAJAS, Chief Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


(Do Not Publish)
1. See e.g., Appellant was asked by her attorney whether she was married to Jose Gutierrez, Sr.; she
corrected that presumption and clarified that he was the child's father. Later, Appellant was asked whether her two
older children were going to school; she defined that one was going to school and the other stayed home with her. .
2. See e.g., Appellant was asked whether a certain police officer read her statements back to her; she
distinguished that she did not know the police officer by name, but that it was the officer present in court the
previous day of trial. Later, Appellant was asked whether she had patted and burped the victim; she clarified that
she patted the baby, but did not remember whether or not he had burped. 
3. Tex. Code Crim. Proc. Ann. art. 38.22 §1 (Vernon 2002). In this article, a written statement of an accused
means a statement signed by the accused or a statement made by the accused in his own handwriting or, if the
accused is unable to write, a statement bearing his mark, when the mark has been witnessed by a person other than a
peace officer.