La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
Una vez más debemos resolver una controversia surgida del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Co-munitarios de la Administración de Corrección, Regla-mento Núm. 6994 del Departamento de Estado de 29 de junio de 2005. En particular, debemos resolver si el proce-dimiento administrativo celebrado contra el peticionario *320 satisfizo las garantías del debido proceso de ley. Entende-mos que sí.
I
El Sr. Miguel Álamo Romero se encuentra cumpliendo una pena de reclusión en la Institución de Máxima Segu-ridad de Ponce. El 6 de octubre de 2006, el oficial de cus-todia Jonathan Machado Vega presentó un informe disci-plinario en su contra al amparo del Reglamento de Procedimientos Disciplinarios para Confinados y Partici-pantes de Programas de Desvío y Comunitarios. Imputó al señor Álamo Romero haber participado en los hechos que culminaron en la muerte de otro recluso. Específicamente, el oficial Machado Vega imputó al señor Álamo Romero una conducta prohibida consistente en la “posesión de arma blanca, asesinato/homicidio, revuelta’’.(1)
Iniciado el procedimiento administrativo correspon-diente, la Administración de Corrección celebró una vista en la que escuchó el testimonio del querellado, del oficial Machado Vega y de un testigo de éste. Según surge del expediente, el querellado testificó que había actuado en le-gítima defensa.
En su alegato, el Procurador General nos ha informado que, de manera simultánea al trámite administrativo, el Estado inició el encausamiento criminal del señor Álamo Romero. Tomamos conocimiento judicial de que, al pre-sente, la acción penal culminó.(2)
Así las cosas, el oficial examinador emitió una resolu-ción en la cual determinó que el señor Álamo Romero había *321 incurrido en la conducta prohibida imputada en la querella. Impuso, como sanción, la cancelación de la tota-lidad de la bonificación acumulada por buena conducta por el querellado al momento del acto prohibido, correspon-diente al periodo de tiempo transcurrido entre el mes anterior a la comisión de éste hasta la fecha de la emisión de la resolución. Además, ordenó la segregación disciplinaria del querellado durante un término de sesenta días, así como la cancelación del privilegio de visitas durante igual periodo de tiempo.
Luego de agotada la vía de reconsideración en la esfera administrativa, el querellado acudió ante el Tribunal de Apelaciones en solicitud de una revisión judicial. Dicho foro confirmó la determinación recurrida por entender que hallaba sustento en las constancias del expediente admi-nistrativo y que las sanciones impuestas guardaban rela-ción con la conducta prohibida probada. Una moción posterior de reconsideración ante dicho foro también fue declarada “sin lugar” mediante resolución notificada a las partes el 30 de marzo de 2007.
Inconforme aún, el señor Alamo Romero presentó el re-curso que nos ocupa. En éste, plantea que erró el foro re-currido al confirmar la imposición de la sanción administrativa. Su argumento central gira en tomo a que el procedimiento administrativo celebrado no satisfizo las exigencias del debido proceso de ley, toda vez que no contó con asistencia legal durante éste.
Originalmente, el Estado compareció mediante una mo-ción de desestimación por falta de jurisdicción que declara-mos “sin lugar”. En su alegato, éste reitera su postura a los efectos de que el recurso ante nuestra consideración fue presentado tardíamente. Siendo norma reiterada que las cuestiones jurisdiccionales deben ser resueltas con prefe-rencia a otros asuntos, atendemos este planteamiento en primer lugar.
*322 II
Sostiene el Procurador General que, toda vez que la re-solución del Tribunal de Apelaciones que declaró “sin lu-gar” la moción de reconsideración presentada por el peti-cionario fue notificada el 30 de marzo de 2007, éste tenía hasta el 30 de abril del mismo año para recurrir de la de-terminación ante este Foro. Afirma que, sin embargo, el peticionario presentó su recurso el 2 de mayo de 2007, esto es, dos días en exceso del término jurisdiccional disponible para hacerlo.
No podemos resolver el planteamiento del Estado en abstracción de la realidad de los reclusos que litigan sus causas por derecho propio. Por el contrario, debemos atender el llamado de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (Ley de la Judicatura) a que seamos sensibles a la realidad de los distintos componentes de nuestra sociedad. Exposición de Motivos de la Ley de la Judicatura, Ley Núm. 201 de 22 de agosto de 2003 (2003 (Parte 1) Leyes de Puerto Rico 971-974). El Art. 1.002(a) de dicho estatuto dispone, en lo pertinente, que la Rama Judicial será “accesible a la ciudadanía; prestará servicios de manera equitativa, sensible y con un enfoque humanista”. 4 L.P.R.A. sec. 24a. De ahí que nos hayamos expresado en torno a la necesidad de evitar que la aplicación automática e inflexible de los requisitos reglamentarios prive a un litigante de su derecho de acceso a los tribunales. Gran Vista I v. Gutiérrez Santiago y otros, 170 D.P.R. 174 (2007).
La restricción de la libertad de la población penal implica, entre otras cosas, la falta de control por parte de los reclusos sobre el manejo de su correspondencia. En el ámbito penal, la Regla 195 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, reconoce dicha circunstancia al disponer que las apelaciones de sentencias criminales presentadas *323 por reclusos por propio derecho se formalizarán “entregan-do el escrito de apelación, dentro del término para apelar, a la autoridad que le tiene bajo custodia”.(3) Se trata de una norma de origen jurisprudencial, cuyo fin es evitar que un recluso que oportunamente hizo cuanto le correspondía ha-cer para que su escrito fuera presentado en el tribunal antes de que expirara el término para apelar, pierda este de-recho a apelar por la única razón de que la institución penal, bajo cuya autoridad se encuentra, remitió el docu-mento tardíamente. Huertas v. Jones, 75 D.P.R. 382 (1953). Véanse, además: Pueblo v. Flores, 77 D.P.R. 660 (1954); Pueblo v. Hernández Castro, 90 D.P.R. 336 (1964) (aplican-do la norma una vez había sido codificada en las Reglas de Procedimiento Criminal de 1963).
Las mismas razones que inspiran y justifican la existencia de la norma citada se encuentran presentes en casos como el que ahora atendemos, en que la parte peticionaria desea ejercer su derecho de revisión judicial de una decisión administrativa ligada a su condición de recluso. Por tal razón y en atención a los principios esbozados, resolvemos que, por analogía, en los casos de revisión judicial de decisiones administrativas de la Administración de Corrección en procedimientos disciplinarios instados por reclusos por derecho propio, se entenderá que el recurso fue presentado en la fecha de entrega a la institución carcelaria. Esta autoridad será responsable, a su vez, de tramitar el envío del recurso al foro correspondiente.
Decidir lo contrario enervaría las disposiciones estatu-tarias y reglamentarias que conceden el derecho de revi- *324 sión judicial a los reclusos en procedimientos administra-tivos disciplinarios e impondría una barrera a quienes ejerzan tal derecho pro se. Ello en contravención de la Ley de la Judicatura y en menosprecio de la importancia que reviste la revisión judicial de las decisiones administrati-vas, la cual “garantiza al ciudadano protección y remedio frente al organismo administrativo”. D. Fernández Quiño-nes, Derecho administrativo y Ley de Procedimiento Admi-nistrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 1993, pág. 517.
En relación con este caso, ciertamente el Reglamento de este Tribunal establece un término jurisdiccional de treinta días para la presentación de aquellos recursos de revisión de resoluciones o sentencias del Tribunal de Ape-laciones en procedimientos de revisión judicial de decisio-nes administrativas. 4 L.RR.A. Ap. XXI-A. Como adelanta-mos, el Tribunal de Apelaciones notificó la resolución de la moción de reconsideración del peticionario el 30 de marzo de 2007. El señor Álamo Romero, por su parte, incluyó con su oposición a la moción de desestimación presentada por el Procurador General ante este Foro, una copia del recibo de formulario o correspondencia Privilegiada que acredita que entregó su recurso de certiorari a la autoridad carcela-ria el 27 de abril de 2007. Esto es, tres días antes del ven-cimiento del término jurisdiccional para recurrir de la de-terminación del foro apelativo intermedio. Dicha fecha es congruente con el matasellos del servicio postal que surge del sobre en el que se incluyó el recurso, cual es el 30 de abril de 2007. Toda vez que el peticionario entregó oportu-namente su recurso a la autoridad carcelaria y según la norma que hemos adoptado, se entiende que el recurso de revisión judicial fue presentado en el término jurisdiccio-nal de treinta días.
Contando con jurisdicción para considerar el recurso presentado por el señor Álamo Romero, procedemos a así hacerlo.
*325 III
Alega el peticionario que el procedimiento disciplinario llevado a cabo en su contra debe invalidarse por no haber cumplido con las exigencias del debido proceso de ley, al no habérsele permitido estar representado por abogado du-rante éste. De otra parte, el Procurador General sostiene que el error de la Administración de Corrección consistió en no haber paralizado el procedimiento administrativo, una vez comenzada la acción penal contra el señor Alamo Romero. Ello, como medida preventiva para salvaguardar su derecho contra la autoincriminación ante el trámite de dos procedimientos simultáneos o paralelos en la esfera administrativa y criminal. Fundamenta su posición en nuestra decisión en E.L.A. v. Casta, 162 D.P.R. 1 (2004). Abordaremos en primer lugar el argumento del Estado.
En E.L.A. v. Casta, supra, tuvimos la oportunidad de discutir la figura de los procesos paralelos y los retos que representa para la disposición adecuada de los asuntos que producen controversias tanto en la esfera civil como en la penal. En esa ocasión, expresamos que el inicio de un procedimiento criminal simultáneo a una acción civil o administrativa puede suscitar problemáticas de índole constitucional, toda vez que coloca a la parte demandada en el ámbito civil en la disyuntiva de tener que escoger entre presentar todas sus defensas y reclamaciones, o limitar el acceso del Estado a información que podría autoincriminarle. E.LA. v. Casta, supra, pág. 16. De la misma manera, en caso de que el promovido decida guardar silencio en el pleito civil, se expone a que se dicte sentencia en su contra, toda vez que nada impide que se deriven inferencias adversas de su invocación del privilegio contra la autoincriminación. Id., pág. 17.
En estos casos, los tribunales pueden tomar medidas dirigidas a proteger la integridad de los procesos, *326 entre ellas, la paralización del pleito civil en tanto se dilu-cida la causa criminal. E.L.A. v. Casta, supra, pág. 19. Sin embargo, es preciso enfatizar que la iniciación de procesos paralelos no es una actuación inherentemente inconstitu-cional y que la procedencia de las medidas preventivas de-penderá de las circunstancias de cada caso. Id., pág. 18. Véase, además, Arden Way Associates v. Boesky, 660 F. Supp. 1494 (S.D. N.Y. 1989).
La dificultad que presenta el caso ante nuestra conside-ración es que no estamos en posición de determinar si, como aduce el Procurador General, procedía la paraliza-ción del procedimiento administrativo por estar presentes las “circunstancias especiales” que hubieran justificado esta medida.(4) Primeramente, desconocemos el estatus del procedimiento administrativo al momento del inicio de la acción penal, pues ninguna de las partes se ha expresado sobre el particular. En segundo lugar, el peticionario no solicitó la paralización del procedimiento administrativo, por lo que dicho planteamiento no estuvo ante la conside-ración del oficial examinador ni fue objeto de determina-ción administrativa. E.L.A. v. Casta Developers, supra, pág. 19 (“los tribunales —a solicitud de las partes— pue-den utilizar diferentes tipos de mecanismos procesales a los fines de proteger la constitucionalidad o la integridad de estos procesos paralelos”). (Enfasis suplido.)
La decisión de paralizar un procedimiento es altamente discrecional y debe basarse en la consideración de múltiples criterios. E.L.A. v. Casta, supra, pág. 19 esc. 9. No existiendo una determinación administrativa en cuanto a este aspecto, no estamos en posición de ejercer nuestra función de revisión judicial para determinar si procedía o *327 no la paralización del procedimiento administrativo y si erró el foro administrativo al no decretarla motu proprio.(5)
Más aún, el fin que en este caso hubiera justificado la paralización del procedimiento administrativo en tanto se dilucidaba el penal era salvaguardar el derecho contra la autoincriminación de la parte sometida a ambos procesos. Toda vez que al presente el procedimiento penal contra el señor Alamo Romero culminó, la controversia en relación con la procedencia de la paralización advino académica.
Por lo tanto, debemos concluir que no cabe disponer de este caso a base de las normas que lidian con el trámite de los procedimientos administrativos y criminales paralelos. En consecuencia, procedemos a discutir el señalamiento del peticionario en relación con la validez del procedi-miento administrativo celebrado en su contra.
IV
La Ley Orgánica de la Administración de Corrección faculta a esta agencia para adoptar la reglamentación pertinente para disciplinar a los reclusos incursos en mala conducta. 4 L.P.R.A. see. 1163. En ejercicio de esta facultad y conforme a las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. see. 2101 et seq.), la Administración de Corrección adoptó el Reglamento de Procedimientos Disciplinarios *328 para Confinados y Participantes de Programas de Desvío y Comunitarios, supra, con el fin de propiciar un ambiente de seguridad y orden en las instituciones correccionales del país. Introducción, Reglamento de Procedimientos Discipli-narios para Confinados y Participantes de Programas de Desvío y Comunitarios, supra, págs. 1-2. Véase, además, López Rivera v. Adm. de Corrección, 174 D.P.R. 247 (2008).
Este Reglamento establece la estructura del aparato sancionador de la Administración, así como las nor-mas sustantivas y los procedimientos que éste habrá de seguir. López Leyro v. E.L.A., 173 D.P.R. 15 (2008). Específicamente, el reglamento define la conducta prohibida a los confinados y la clasifica en tres niveles de severidad. En caso de encontrarse al querellado incurso en la conducta prohibida imputada, se le impondrá la sanción correspondiente según su nivel de severidad.
En lo pertinente a la controversia, el Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios establece que la imputación de conducta prohibida de nivel I de severidad requiere la celebración de una vista administrativa ante un oficial examinador, durante la cual el confinado podrá contar con la asistencia de un investigador de vistas. Reglas 13A y 14J del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios, supra, págs. 37 y 41-42. El investigador de vistas es un ente imparcial encargado de recopilar toda la prueba pertinente al trámite de la querella disciplinaria y su asistencia durante la vista puede incluir “la obtención de declaraciones de testigos e información adicional”. Regla 14J del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios, supra. El Reglamento continúa estableciendo que el confinado podrá tener representación legal “sólo en aquellas vistas donde pueda ser revocada su participación en algún Programa de Desvío *329 y Comunitario, Supervisión Electrónica, o Programa de Pases Extendidos”. Íd., Regla 14J(1), pág. 42. Esta última es la disposición cuya validez debemos considerar a la luz del debido proceso de ley en su vertiente procesal.
V
Como sabemos, el debido proceso de ley en su vertiente procesal establece unas garantías mínimas que el Estado debe proveer al ciudadano al afectarle su vida, propiedad o libertad. Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1993). Al examinar un reclamo al amparo de este principio constitucional, es preciso primero identificar si existe un interés que amerita protección. De contestarse en la afirmativa esta primera interrogante, procede entonces dilucidar cuál es el procedimiento debido (“what process is due”). Véase Fernández Quiñones, op. cit., pág. 316.
Con la aprobación de la L.P.A.U., la Asamblea Legislativa extendió a los procedimientos adjudicativos de las agencias administrativas ciertas garantías mínimas inherentes al debido proceso de ley. Gutiérrez Vázquez v. Hernández y otros, 172 D.P.R. 232 (2007). Ello, en vista de que en su función adjudicativa, las agencias administrativas intervienen con intereses libertarios y propietarios del ciudadano. Específicamente, la Sec. 3.1 del estatuto, 3 L.P.R.A. see. 2151, enumera las garantías procesales que deben ser salvaguardadas en todo procedimiento adjudicativo celebrado por una agencia, a saber: el derecho a una notificación oportuna de los cargos en contra de una parte, a presentar evidencia, a una adjudicación imparcial y a que la decisión esté fundamentada en el expediente.
Acerca de estos principios, hemos expresado que el debido proceso de ley en el ámbito administrativo carece de la rigidez que se le reconoce en la esfera penal. López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113 (1996). *330 Lo importante, a fin de cuentas, es que el procedimiento celebrado sea justo y equitativo. Íd. Véase, además, Torres v. Junta Ingenieros, 161 D.P.R. 696 (2004).
A la luz de lo anterior, es preciso evaluar si en este caso existe un interés libertario o propietario del confinado que podría ser afectado por el procedimiento disciplinario en su contra. De ser así, procede entonces establecer la extensión del debido proceso ley en este contexto. Veamos.
Los Arts. 16-17 de la Ley Orgánica de la Administración de Corrección, 4 L.P.R.A. sees. 1161 — 1162, otorgan a los confinados, que demuestren buena conducta y asiduidad, el derecho a la rebaja del término de su sentencia de acuerdo con las disposiciones de la ley. La Regla 4B del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios, supra, pág. 3, por su parte, define las bonificaciones como una “[rjebaja al término de la sentencia impuesta que se otorga a toda persona sentenciada a cumplir pena de reclusión en cualquier institución”. Por su propia definición, la bonificación se refiere a la posibilidad de que el Estado considere cumplida la pena de reclusión del confinado antes de la fecha correspondiente. Siendo así, es indudable que la bonificación representa una expectativa de los confinados en relación con la fecha cuando podrían obtener su libertad. La cancelación de la bonificación acumulada, por su parte, conlleva un cambio en el término de duración del confinamiento. En vista de ello, resolvemos que los confinados poseen un interés libertario legítimo en las bonificaciones por buena conducta. Por tal razón, cualquier procedimiento que pueda conllevar la cancelación de parte o la totalidad de la bonificación acumulada por un recluso debe satisfacer los imperativos del debido proceso de ley.
Corresponde entonces determinar si el proceso debido incluye el derecho del confinado a estar asistido por un *331 abogado durante el procedimiento disciplinario que podría tener como consecuencia la cancelación de bonificaciones.
VI
En Pueblo v. Falú Martínez, 116 D.P.R. 828 (1986), tuvimos la oportunidad de considerar la extensión de algunos derechos constitucionales que amparan a los confinados. Expresamos en esa ocasión que la realidad de las instituciones carcelarias obliga a un régimen disciplinario riguroso para la protección de la sociedad y de los propios reclusos. Id., pág. 836. De esa manera, nos hicimos eco de las expresiones del Tribunal Supremo de Estados Unidos que ha expresado que aunque los confinados no están fuera del alcance de la Constitución, “poseen aquellos derechos que no resulten incompatibles con los propósitos del confinamiento”. Íd., citando a Hudson v. Palmer, 468 U.S. 517, 524 (1984).
Estos pronunciamientos encuentran su origen en Wolff v. McDonnell, 418 U.S. 539 (1974). En este caso, en el con-texto de una demanda de daños por violación de derechos civiles, ese foro determinó que si bien los confinados no son despojados de sus derechos, una vez ingresan en prisión, ven disminuidos ante las exigencias del régimen carcelario.(6) A base de ello, el Tribunal se negó a reconocer el derecho a la asistencia de abogado en los procedimientos disciplinarios que pueden culminar en la cancelación de una bonificación por buena conducta. Al así proceder, el Tribunal expresó que introducir la figura del abogado en los procedimientos disciplinarios imprimiría en éstos un matiz adversativo que reduciría su utilidad como meca- *332 nismo ágil y flexible dirigido a mantener el orden y la se-guridad en las prisiones. Id., pág. 570.(7)
Como se desprende de lo anterior, al examinar el alcance de los derechos que amparan a los confinados en los procedimientos disciplinarios, el Tribunal Supremo de Estados Unidos consideró la finalidad y naturaleza de estos procedimientos, brindando particular importancia al interés en preservar la seguridad en las cárceles y en minimizar la tensión inherente a la relación entre los reclusos y las autoridades carcelarias. Wolff v. McDonnell, supra, pág. 562.
El Tribunal reafirmó su postura poco después en Baxter v. Palmigiano, 425 U.S. 308, 315 (1976). En esa ocasión, al resolver un planteamiento al amparo de la Quinta En-mienda a la Constitución estadounidense, el Tribunal en-fatizó que los procedimientos disciplinarios no involucran los mismos intereses que los procesos criminales. Íd., pág. 319.
En Puerto Rico, hemos reconocido el derecho a la asistencia legal como corolario del debido proceso de ley en procedimientos posteriores a la convicción penal donde la importancia de los intereses involucrados exige esta asistencia. Este es el caso de los procedimientos para la revocación de libertad bajo palabra o sentencia suspendida. Al así resolver, hemos expresado que si bien el probando no es una persona enteramente libre, una vez el Estado le confiere el derecho limitado a estar en libertad, no puede cancelarlo en abstracción de los imperativos del debido proceso de ley. Martínez Torres v. Amaro Pérez, supra, 116 D.P.R. 717, 723-724 (1985);(8) Quites v. Del Valle, 167 D.P.R. 458 (2006). Sin embargo, por tratarse de la re- *333 vocación de una libertad limitada en un procedimiento posterior a la convicción, el confinado no tiene derecho a todas las garantías procesales que se exigen para un proceso criminal. Martínez Torres v. Amaro Pérez, supra; Maldonado Elías v. González Rivera, 118 D.P.R. 260 (1987). Véase, además, E.L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Vol. 1, Sec. 7.1, pág. 519.
De manera similar, la cancelación de la bonificación acumulada por un recluso se produce en un procedimiento administrativo posterior a la convicción criminal que, como hemos mencionado, por su naturaleza, no tiene que satisfacer los imperativos de debido proceso de ley, exigibles en un procedimiento criminal. Sin embargo, al comparar los intereses involucrados en un procedimiento de revocación de libertad bajo palabra o de sentencia suspendida yenun procedimiento disciplinario que podría culminar en la cancelación de la bonificación acumulada por un recluso, es preciso concluir que éstos no son de la misma jerarquía. Toda vez que la revocación de libertad bajo palabra o sentencia suspendida implica la encarcelación de una persona que hasta ese momento disfrutó de su libertad física, es preciso concluir que el interés afectado en este tipo de procedimiento es mayor al implicado en la bonificación.
Por otra parte, no podemos soslayar la importancia que reviste el interés en preservar la seguridad y el orden en las instituciones carcelarias del país. Ya hemos expresado que las prisiones son lugares de cautiverio involuntario, cuya peligrosidad y la protección de los empleados, personal administrativo, visitantes y de los propios reclusos obligan a que se tomen rigurosas medidas de seguridad. Pueblo v. Falú Hernández, supra, pág. 836. El interés en proteger a los miembros del sistema carcelario exige flexibilidad y prontitud en los procedimientos disciplinarios dirigidos a castigar la conducta prohibida de los *334 confinados. Si bien dicha flexibilidad administrativa no puede prestarse para la abdicación de las protecciones que reconoce nuestro ordenamiento, es preciso formular un balance entre ambos intereses. Al hacerlo, debemos también considerar nuestras expresiones pasadas en el sentido de que la Administración de Corrección merece deferencia en la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias. Cruz v. Administración, 164 D.P.R. 341 (2005).
A la luz de lo anterior, resolvemos que los confinados que no se encuentran participando en un Programa de Desvío, Comunitario o de Pases Extendidos no tienen derecho a la asistencia de un abogado en procedimientos al amparo del Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios, y que, por lo tanto, la disposición impugnada debe sostenerse a la luz del debido proceso de ley.
VII
En este caso, la Administración de Corrección condujo un procedimiento disciplinario contra el peticionario por hechos que culminaron en la muerte de otro recluso. Du-rante dicho procedimiento el peticionario contó con la asis-tencia del investigador de vistas, según provee el Regla-mento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios. En vista de la conclusión a que hemos llegado en relación con la extensión del debido proceso de ley en este tipo de pro-cedimiento, es menester concluir que el procedimiento con-ducido contra el peticionario es válido. Toda vez que el pe-ticionario no nos ha puesto en posición de concluir que la determinación administrativa fuera realizada arbitraria o caprichosamente, ésta debe sostenerse.
En virtud de nuestros pronunciamientos, se confirma, *335 aunque por otros fundamentos, la sentencia del Tribunal de Apelaciones recurrida.

Se dictará sentencia de conformidad.

 Todos los cargos constituyen conducta prohibida de nivel I de severidad. Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios, de la Administración de Corrección, Regla-mento Núm. 6994 del Departamento de Estado, de 29 de junio de 2005, Tabla I, Códigos 107, 111 y 120.

 Se halló al señor Álamo Romero culpable del delito de asesinato en segundo grado y se le sentenció a cumplir veinte años de pena de reclusión.

 Según los demás requisitos para el perfeccionamiento de los recursos de apelación, la Regla 195 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone que la institución carcelaria estará “obligada a presentar inmediatamente el escrito de ape-lación en la secretaría del tribunal que dictó la sentencia y copia del mismo en el tribunal de apelación. Al recibir el escrito de apelación, el secretario del tribunal sentenciador lo notificará al fiscal”.

 Las circunstancias especiales son aquellas que sugieren la existencia de pre-juicio indebido, mala fe, tácticas gubernamentales maliciosas o interferencia con derechos constitucionales. E.L.A. v. Casta, 162 D.P.R. 1, 18 (2004). Véase, además, United States v. Kordel, 397 U.S. 1, 11-12 (1970).

 No obstante, debemos reconocer que el procedimiento administrativo condu-cido contra el peticionario pone de manifiesto los conflictos que surgen de la litiga-ción paralela, pues la conducta prohibida que se le imputó en el procedimiento ad-ministrativo era, además, constitutiva de delito. Es decir, el peticionario pudo haberse encontrado en la disyuntiva de tener que decidir entre exponer todos sus argumentos ante el oficial administrativo —arriesgándose así a autoincriminarse— o guardar silencio. Como dijimos, en este último caso, el organismo administrativo estaría facultado para derivar inferencias de la invocación del privilegio. Así lo dis-pone expresamente la Regla 9G(2)(b) Reglamento de Procedimientos Disciplinarios para Confinados y Participantes de Programas de Desvío y Comunitarios de la Ad-ministración de Corrección, Reglamento Núm. 6994 del Departamento de Estado de 29 de junio de 2005.

 Expresó el Tribunal: “there is no iron curtain drawn between the prisons and the Constitution of this country.” Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Véase, además, 3 Rotunda and Nowak, Treatise on Constitutional Law, Substance and Procedure 4th 211 (2008).

 Expresó el Tribunal: “the insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals.” Wolff v. McDonnell, supra, pág. 570.

 Al presente, los estatutos aplicables adoptaron los parámetros expuestos en la citada opinión.